SAMUEL SLEE, Appellant,
*against*
GEORGE BLOOM and others, Respondents.

APPEAL from the Court of Chancery. This cause came before this Court, at its last session, by an appeal from a former decree of the Court of Chancery, and, after hearing counsel on that appeal, the decree was reversed, and the record remitted to the Court of Chancery. The original case in Chancery will be found reported in 5 *Johns. Ch. Rep.* pp. 366—388., and the proceedings on the appeal in this Court, in 19 *Johns. Rep.* pp. 456—486. The *remittitur*, having been filed in the Court of Chancery, the following decree was entered in that Court, on the 27th of *May*, 1822 : " On reading and filing the *remittitur*, in this cause, from the Court for the Trial of Impeachments and the Correction of Errors, and the counsel for the parties having been heard thereon, it is ordered, adjudged, and decreed, that the order, judgment, and decree, of the said Court, be carried into full effect : It is, therefore, ordered, adjudged, and decreed, that it be referred to one of the masters of this Court, to *ascertain and report the amount of debt due, with interest, to the complainant, from the Dutchess Cotton Manufactory ;* and that, in order to ascertain such amount, the pleadings and proofs, in this cause, be given in evidence, and *such further competent proof as either party may think proper to furnish ;* and that, on such reference, all

The respondents associated together for establishing a cotton manufactory, and became a corporation, for twenty years, according to the provisions of the act, (sess. 34. ch. 67.) passed *March* 22d, 1811; the *seventh* section of which act declares, " that for debts which shall be due and owing by the company, at the time of its dissolution, the persons then composing such company, shall be individually responsible to the extent of their respective shares of stock in the said company." The corporation, on the 22d of

*November,* 1816, executed a bond to the appellant, S., under their corporate seal, on which a judgment was obtained, in *May*, 1817. The corporation having been dissolved in *February,* 1818 : *Held*, that the judgment debt of the corporation was binding and conclusive on the respondents, individually, to the extent of their respective shares.

Though the trustees or agents of the company, were not the trustees or agents of the individual stockholders, yet they might bind the individual stockholders to the extent of their respective shares, in the event of a dissolution of the company. And the individuals, in such event, became liable for the debt so contracted by the trustees and agents of the company, and could not impeach the consideration of such debt, except by showing fraud or imposition in obtaining the bond, or that it was founded in error.

A defendant is not entitled to open an account, unless a sufficient foundation has been laid for that purpose in the answer.

It is not the proper course to refer to a master, an examination into facts, going to the merits of the cause, and as to which proofs have been taken in chief, in the usual way.

IN ERROR.
........
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

payments made by the defendants, respectively, on their shares, be duly credited : And further, that the defendants, *Cyrenus Crosby*, *Albert Cox*, and *George Bloom*, be allowed, by way of set-off, any demand which they, or either of them, have, and which ought in justice to be allowed; and that the master report with all convenient speed; and all further questions are reserved : And it is further ordered, that if any questions arise before the master, touching the admissibility of the proof, in relation thereto, the master be at liberty to apply for further directions, and to state, at the same time, the nature of the questions and of the proof."

A reference was accordingly had before one of the masters of the Court of Chancery, who, on the 14th of *June*, 1822, made his report, as follows :

" That having been attended by counsel on behalf of the complainant and defendants in the above cause, and having proceeded upon the matters referred by such decretal order, certain questions of an equitable nature have arisen, which it would be for the advantage of all parties, should be brought before the Court for decision, before a further investigation of the accounts is made ; and under the authority to that effect, contained in such decretal order, I thereupon make this my separate *report*.

" In order to establish the amount of the debt due to the above complainant by the *Dutchess Cotton Manufactory*, an exemplification of the record of a judgment in the Supreme Court of the state of *New-York*, in favour of the complainant, against the said manufactory, has been produced before me ; which judgment was docketed the 19th of *May*, 1822, and given for the sum of 46,986 dollars debt, and 30 dollars and 29 cents costs, such debt being the penalty of a bond to that amount, upon which such judgment was had.

" From the proved, and admitted facts in this cause, it appears, that such bond was executed by the president, directors, and company of the said manufactory, on the 22d of *November*, 1816, and was conditioned for the payment of 23,493 dollars and 35 cents, with interest from the 5th of *November*, 1816; that such condition was the balance of the account of the complainant with the manufactory, as finally

IN ERROR.
........
ALBANY,
Nov. 1822.

S**EE**
v.
BLOOM.

adjusted by the trustees ; that with a view to such adjustment, the said trustees had appointed a committee of three of the members of their board, the president and two others ; the two last of whom reported their examination of such accounts, and a balance of 24,443 dollars and 35 and a half cents due to the complainant, from which amount 950 dollars was deducted by resolution of such trustees, and the bond was executed as aforesaid, for the balance, viz. the sum of 23,493 dollars and 35 cents.

"The counsel of the complainant exhibited a statement of his claim, charging the company with the condition of the said bond, and interest, and giving credit thereupon for such sums of money as he alleged were properly to be allowed ; and contended, that the balance so found was the true balance due from the said company to the complainant, and to be reported as such, unless further proper credits upon the amount of such condition could be proved by the defendants. On the part of the defendants it was then claimed and insisted, that the aforesaid liquidation of the accounts of the complainant, and the bond and judgment consequent thereupon, were not conclusive upon them as to the true amount of debt due to the complainant, but that they were at liberty to contest and falsify the same under the decree of reference, and the *remittitur* of the honourable the Court of Errors in this cause ; and required that I should hear their allegations and proofs in relation thereto.

"And having considered such decree and *remittitur*, I am of opinion, that *they neither expressly direct* that the aforesaid judgment and liquidation should be received as conclusive, nor that the consideration or particulars of the same should be opened and gone into ; but have left the same to be determined to be conclusive or *prima facie* evidence of the debt to be ascertained, according to the principles of equity applicable to the facts which should appear respecting them. In order to procure the said account to be opened, and certain items thereof investigated, the defendants have alleged, that there was fraud or error in such accounts in the following particulars :

"*They alleged, and offered to* prove, by the testimony in the cause, and further competent proof, that the land, site,

IN ERROR.
•••••••
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

water privileges, dam, raceway, and the buildings, part of the property sold by the complainant, were not, at the date of such purchase, of one half the value at which they were charged by the complainant, and estimated by the committee of the trustees; that a portion of such land then pretended to be sold, and actually included within the boundaries in the deed to the company, had been previously sold and conveyed by the complainant, to one *George Reid;* that after such latter conveyance, the complainant had built the factory in part upon the land so conveyed to *Reid;* and that such facts had come to the knowledge of the defendants within a short time previous hereto. That the complainant had, also, previous to such sale to the said company, sold or conveyed to said *Reid*, a water privilege for the use of his paper-mill, to such extent as such paper-mill should require, and that the privilege actually vested in such company, by his deed to them, was only the right to the surplus water not required by said *Reid* for such purpose; that of all these facts, the trustees, (other than the committee,) as well as the stockholders generally, were wholly ignorant, and that such committee were either not informed thereof, or, if informed, unwarrantably concealed them; and that the facts above mentioned, materially diminished the value of the said premises below the amount of the charge and estimate.

" As to the above allegation and offer, *I report*, that I have concluded not to admit any proof as to any portion of such property being overvalued, if the excess of valuation appears to be error of judgment merely upon a full knowledge of facts; but to require the defendants to show *unwarranted and deceptive representations, or concealment of material facts* on the part of the complainant, or connivance of such committee with respect to the same. It has been further alleged by the defendants, that they had proved, by the testimony in this case, that the complainant had contracted to sell such factory and machinery at the prices they originally cost him; that the spindles, part of such machinery, had originally cost the sum of 12 dollars, and had been charged and allowed for at the sum of 16 dollars.

" That it has been objected on the part of the complainant,

that the evidence in relation to such matter was clearly inadmissible, being statements made by the defendants in this case, who were examined under an order of this Court, on the application of other defendants, and that, in my opinion, even if such evidence could be received, it does not establish the fact that such contract was made as a condition of the sale, and I find sufficient testimony to conclude, that the said sum of 16 dollars was not an unfair price ; and that, in my opinion, no further evidence ought to be received in relation to the alleged contract, or to the value of such spindles. The defendants also alleged, that it is proved by the testimony in that cause, that a picker, part of such machinery, was charged 50 dollars higher than it had cost the said complainant, which was in violation of his alleged contract to sell to the company at cost, as well as an unjust overvaluation of the said article.

IN ERROR.
........
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

" The defendants further alleged, that manifest error appeared in the item of such account, allowing the sum of 1,416 dollars for the services of the complainant, from *January*, 1814, at the rate of 500 dollars a year, and a like allowance to *Nathan Moulthrop* for the same period ; that such allowance commenced about one year and three months prior to the actual purchase of the premises by the company, and was illegally and unjustly allowed; and, further, that it appeared by the testimony, that such services were greatly overvalued. That there was, also, manifest error in such account in charging interest on the sum of 30,000 dollars, for two years and ten months, making such interest to be allowed for the period of more than one year prior to the purchase of such premises by the company.

" And that there was manifest error in a deduction of fifteen per cent. upon the proceeds of certain cloth and yarn sold at the factory by the complainant, as agent, which sum, it has been contended, is apparently a deduction by way of commission, for the use of the complainant.

" In these particulars, the defendants have alleged, that there were gross errors in such account, as well as in other items not particularized, and required that the same should be investigated. And having considered the matters above stated, and heard the arguments of counsel thereupon, I am

IN ERROR.

ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

of opinion, and so report, that the defendants are entitled, on the reference now before me, to falsify and surcharge the said account at large ; specifying, and going into proof of any error of such a nature and description as, upon a bill filed to open the account, if properly charged, and duly proved, would be declared a sufficient error by this Court, to be amended by its direction."

The appellant excepted to the report, and filed his exceptions, as follows :

" 1st *Exception.* For that it appears by said report, that said master considered and adjudged that the decretal order, referring said cause to him, and the *remittitur* mentioned in said report, neither expressly direct that the judgment and liquidation mentioned therein should be received as conclusive, nor that the consideration of particulars of the same, should be opened or gone into, but left the same to be determined to be conclusive or *prima facie* evidence of the debt, to be ascertained according to the principles of equity, applicable to facts which should appear respecting them ; whereas the complainant contends, that the clear and legal import of the express direction given in said decretal order and *remittitur,* is to admit competent proof of payments made towards said judgment, but not to give any evidence to lessen, impeach, or destroy the consideration on which said judgment was founded.

" 2d *Exception.* That although the master has determined not to admit any proof that the land, factory site, water privilege, raceway, and buildings, are overvalued, if the excess of valuation appears to be an error of judgment merely upon a full knowledge of the facts ; still he has adjudged it proper to permit the defendants to show what he denominates unwarranted and deceptive representations or concealment of material facts on the part of the complainant, or connivance of such committee with respect to the same ; whereas the complainant contends, that no such testimony can be given, under the pleadings in this cause, according to the rules of evidence, for that the defendants have not, in any part of said pleadings, alleged any such unwarranted and deceptive representations or concealment of material facts, nor have they in their answer, or otherwise, ever set

forth or suggested, that any such incumbrance existed on said factory premises, or in relation to said water privileges, by means of any previous conveyance by the complainant to *George Reid*, or any other person, or that any part of said factory was built on said *Reid's* land; and that it appears, according to the facts admitted and proved in the case, that the defendants have never sustained, and never can sustain any injury, by any such incumbrance, if the same existed.

" 3d *Exception.* For that it appears, from said report, that the said master, in considering the proofs in the cause, considered the depositions of the defendants themselves as legal evidence in ascertaining the amount due to the complainant; whereas, the complainant contends, that the depositions of the defendants, or any evidence given, or to be given by them, or any of them, relative to the subject of reference, is altogether illegal and inadmissible.

" 4th *Exception.* For that the said master has adjudged and reported, that the defendants are entitled, on the reference, to falsify and surcharge the account at large, and the several items thereof, specifying and going into proof of any error of such nature and description as upon a bill filed to open the account, if properly charged, and duly proved, would be declared a sufficient error by this Court, and be amended by its direction. But the complainant contends, that any such evidence would be illegal and inadmissible under the pleadings in this cause, for that the defendants have not in their answers, or any of them, alleged or averred any mistake or error in any item or items of said account, and that any testimony tending to show any such mistake or error in any of the items of said account, would be a surprise upon the complainant, and what he could not come prepared to meet.

" Addition to the 4th *Exception.* And that the defendants ought not to be permitted to surcharge or falsify as to any article contained in the first purchase made by the *Dutchess Cotton Manufactory* of the complainant, amounting to 30,912 dollars; for that it appears, by the pleadings and proofs in the case, that the price of all the articles was fixed and settled by the parties, by express contract, at the time

said purchase was made, and that the defendants cannot now be permitted to give any evidence to vary said price, or the terms of said contract.

" 5th *Exception.* For that said report goes to open an account for examination, which has been settled by the defendants themselves, or some of them acting as trustees for themselves, and the other of said defendants, and after making large deductions from the amount of the complainant's original demand, by way of adjustment, and the correction of all errors, and executing a bond for the balance, and suffering a judgment to be obtained on said bond in a suit at law; and that without any allegation or suggestion in the pleadings, in this cause, of fraud or deception, on the part of the complainant in obtaining said bond or judgment; whereas, the complainant contends, that the defendants are precluded by said settlement, bond and judgment, from opening said account, and from any examination into the items composing the same, or any part thereof, and that said judgment ought to be received and considered by said master as conclusive evidence of the complainant's demand."

The respondents, also, excepted to the report, and filed their exceptions, as follows:

" 1st *Exception.* For that the said master has stated, in his report, that he had concluded, if the accounts between the said parties should be directed to be opened and gone into, ' not to admit any proof as to any portion of such property' (meaning the property sold and conveyed by the complainant to the *Dutchess Cotton Manufactory*) ' being overvalued, if the excess of valuation appears to be error of judgment merely, upon a full knowledge of facts, but to require the defendants to show unwarranted and deceptious representations or concealment of material facts on the part of the complainant, or connivance of such committee with respect to the same;' whereas the defendants contend, that the said master ought to have determined and concluded, that any overvaluation of any part of the said property, might be shown by the defendants without restriction, and that the said defendants might be permitted to show, on the accounting before the master, what was the actual and fair value and worth of such property at the time of the sale.

"2d *Exception.* For that the said master, in the said report, has stated, that the defendants had alleged that it was proved by the testimony in the case that the complainant had contracted to sell the factory and machinery at the prices they originally cost him, and that the same had been in fact charged at a higher price, and that, 'in his opinion, the evidence does not establish that such contract was made as a condition of the sale;' and that he finds ' sufficient testimony to conclude that the sum of sixteen dollars was not an unfair price, and that no further evidence ought to be received in relation to the said alleged contract, or to the value of such spindles;' whereas, the defendants contend, that the master ought to have decided, that the evidence does establish that such contract was made, as a part of the contract of sale; and that the defendants should be permitted to prove such contract by further and other evidence; and to show, by further evidence, what was the real cost of the said factory and machinery to the complainant; and to also show, by further evidence, what was the real and fair value of such spindles at the time of the sale.

"3d *Exception.* For that the master has reported, ' that the defendants are entitled, on the reference now before him, to falsify and surcharge the said account at large;' whereas, the defendants contend, that the said account ought to be opened generally, and the complainant be called upon to substantiate all the items of the same."

The cause was brought to a hearing in the Court of Chancery, on the exceptions taken by the parties to the master's report; and the Chancellor, on the 17th of *September,* 1822, made the following order and decree:

"This cause having been brought to a hearing at the last term, upon exceptions, taken on the part of the complainant, to the report of *Murray Hoffman,* esquire, one of the masters of this Court, and the same being argued by Mr. *Philo Ruggles,* of counsel for the complainant, in support of the said exceptions, and by Mr. *Stockholm,* and Mr. *Thomas J. Oakley,* of counsel for the defendants, in opposition to the said exceptions, and the pleadings and proofs and documents in the cause, in the reference to the said exceptions, and the

IN ERROR.

ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

master's report and the said exceptions, being duly consider-ed: it is ordered, adjudged, and decreed, that all and sin-gular the said exceptions be, and the same are hereby over-ruled. And inasmuch as the decisions of the master, on the points excepted to in the first, second, fourth, and fifth exceptions, and with the addition to the fourth exception, are correct, *and the judgment against the company, in its corporate character, is not binding and conclusive upon the defendants, when charged in their private and individual character;* and inasmuch as *a sufficient foundation has been laid by the pleadings for opening the accounts;* and inas-much as the third exception does not appear to be founded on fact, as no such decision of the master, as is therein ex-cepted to, appears in the report; and this cause having, at the same time, been brought to a hearing, upon exceptions taken on the part of the defendants to the said report, and the said exceptions argued by the same counsel, on behalf of the respective parties, as aforesaid, and duly considered: it is further ordered, adjudged, and decreed, that the first exception, taken on the part of the defendants, be allowed, *and that the defendants ought to be permitted to show before the master, if they are able, by competent and satisfactory testimony, a material overvaluation of the property referred to, in and by the said exceptions, at the date of the purchase thereof, from whatever cause such excess of valuation was produced.* The great and leading principle applicable to most of the exceptions to the report being, *that the acts of the trustees or agents of the company, while it subsisted as a corporation, however binding and conclusive upon the com-pany in its corporate capacity, and over the corporate pro-perty, are not binding and conclusive upon the individual stockholders of the company, when charged in their persons and property in their individual character; inasmuch as, in that character, they never were represented by such agents or trustees.* And it is further ordered, adjudged, and decreed, that the second exception, taken on the part of the defend-ants, also be allowed; inasmuch as *the defendants ought to be permitted to prove, if they are able, by competent and sa-tisfactory proof, the contract therein referred to, and what was the real cost of the said factory and the machinery, to the*

*complainant*, and what was the real and fair value of the spindles therein referred to, at the time of the sale. And it is further ordered, adjudged, and decreed, that the third exception, on the part of the defendants, be overruled; and the question of costs, arising on the exceptions, taken on each side, as aforesaid, to the said report, is hereby reserved."

From this decree an appeal was entered to this Court.

*P. Ruggles*, for the appellant, contended, that the decree of the Court of Chancery ought to be reversed, for the following reasons :

1. Because, the statute (1 *N. R. L.* 247.) declares, " that for all the debts which shall be due and owing by the company at the time of its dissolution, the persons then composing such company, shall be individually responsible to the extent of their respective shares of stock in the company, and no further." And it is manifest from the same statute, as well as from general principles of law, that no contract can be made, or debt contracted in behalf of the company, but by the trustees ; yet his honour the Chancellor has decreed, " that the acts of the trustees or agents of the company, while it subsisted as a corporation, however binding and conclusive upon the company in its corporate capacity, and over the corporate property, are not binding and conclusive upon the individual stockholders, when charged in their persons and property in their individual character ; which decree, the appellant insists, is in direct opposition to the statute, and would amount to a virtual repeal of the same, inasmuch as the individual stockholders can never be made liable under the act, unless they are liable to pay the debts of the corporation, according to the contracts of the trustees, as no other debts can exist against the corporation at the time of its dissolution.

2. Because, in and by said decree, it is adjudged and declared generally, that a sufficient foundation has been laid by the pleadings in the cause for opening the accounts between the appellant and the company, thereby opening said accounts without restriction or limitation, and subjecting the appellant to be surprised by facts not put in issue, and

to objections of which he could have no previous knowledge, and which might be renewed and varied before the master, at the will of the defendants.

3. Because, it is decreed, that the several exceptions taken by the appellant to the master's report, be overruled and disallowed ; whereas, the appellant insists, that the said several exceptions, for the causes and reasons therein assigned, were well and properly taken, and ought to have been allowed.

4. Because, it is decreed, that the first exception taken by the defendants to the master's report be allowed, and that the defendants be permitted to prove, before the master, any material overvaluation of the property sold by the complainant to the *Dutchess Cotton Manufactory*, at the time of sale, *from whatever cause such excess of valuation was produced ;* whereas, the appellant insists, that no such proof can be legally admitted, as said property was sold by special contract, and the price agreed upon by the parties at the time of the sale ; and especially after the opinion and decision of this Court, that all charge, or pretence of fraud, in the sale of said property, was utterly without foundation.

5. Because, it is decreed, that the second exception taken by the defendants to said report, be allowed, by the general allowance of which, it is, in effect, decided, that the master ought to have considered the testimony of the defendants themselves, as sufficiently proving the contract mentioned in said exception, though they were all directly interested in giving such testimony, and although said testimony was objected to by the appellant as illegal and improper.

6. Because, his honour the Chancellor has decreed, that for the purpose of reducing the appellant's demand, the defendants ought to be permitted to prove, before the master, a pretended contract made by the appellant, to sell the factory and machinery to the company for the price which they originally cost him, though no such contract is alleged, or even alluded to, in the answers of the defendants, or any of them, or in any part of the pleadings ; and that the defendants ought, for the same purpose, to be permitted to

prove what was the real cost of said factory and machinery to the appellant.

7. Because, by said decree, if carried into effect, the acts of the trustees, as agents of the company, and of the respondents, would be made conclusive and binding in all cases where their operation should be in favour of the respondents, but inoperative and void in all cases where their operation should be in favour of the appellant; and that at the election of the respondents.

He cited 1 *Atk. Rep.* 1. 3 *Bro. Ch. Cas.* 266. 2 *Bro. Ch. Cas.* 31. 1 *Madd. Ch.* 81, 82, 83. 2 *Vesey,* 565, 566. 9 *Vesey,* 266. 1 *Sch. & Lef.* 192. *As to opening accounts:* 1 *Vesey,* 289. 2 *Vesey,* jr. 51. 2 *P. Wms.* 93, 94. 1 *P. Wms.* 734—737. 3 *P. Wms.* 111. 3 *Bro. Ch. Cas.* 74. *Cooper's Equ. Pl.* 96. *As to interest:* 2 *Atk. Rep.* 212. 440, 441. *Ambl. Rep.* 584. 11 *Vesey,* 358, 359. 1 *Vesey,* jr. 157—164. 5 *Vesey,* 803. 17 *Vesey,* 26. 1 *Madd. Ch.* 491.

*Oakley,* contra. He cited 3 *Johns. Ch. Rep.* 280. 1 *Madd. Ch.* 81, 82. 9 *Vesey,* 266. 6 *Vesey,* 486. 4 *Vesey,* 411. 14 *Vesey,* 409. 2 *Vesey,* 135, 136. 7 *Vesey,* 617. 3 *Day's Con. Rep.* 52.

SPENCER, Ch. J. By the former decree of this Court, the respondents were required to pay towards the discharge of the appellant's debt against the *Dutchess Cotton Manufactory,* the amount of their respective shares of stock of 100 dollars each, or so much thereof as was necessary to pay the appellant's debt, when ascertained.

In obedience to this decree, the Court of Chancery referred the ascertainment of that debt to a master, who has made his report to that Court, and both parties have excepted to it; the appellant's counsel contending, that under the decree the master could receive no evidence to lessen, impeach, or destroy the consideration of the judgment obtained by the appellant against the company. He, also, excepted to the report, contending, that no evidence can be taken by the master under the pleadings in the cause, of any unwarranted and deceptive representations or concealment

IN ERROR.
.......
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

of material facts as to the value of the property sold by the appellant to the company, nor could any evidence be given of any incumbrances on the property, in consequence of any previous conveyance to *George Reid*, or any other person. Another exception is, that the master has reported that the respondents are entitled to falsify and surcharge the appellant's account at large, which, it is insisted, ought not to be done under the pleadings in the cause. These are the material points of exception on the part of the appellant.

The respondents have, also, excepted to the report, (1) because the master has decided not to admit proof of the overvaluation of the property sold, if such overvaluation appears to be the error of judgment only, upon a full knowledge of facts; the counsel contending, that he ought to have admitted such evidence without restriction, and that they ought to have been allowed to show the actual and fair value and worth of such property at the time of the sale; (2) because, the master ought to have allowed the defendants to prove, that the original contract of sale was, that the appellant agreed to sell the factory and machinery at the prices they originally cost him, and should not have decided, that they had failed to prove such contract; and, (3.) because, the accounts ought to be opened generally, and the appellant required to substantiate all the items of the same.

The Chancellor has decided, that the judgment is not binding or conclusive upon the respondents in their individual capacities, on the ground, that the acts of the trustees, while the corporation subsisted, however binding on the corporation and its property, are not binding and conclusive upon the individual stockholders; and, he has, also, decided, that the master shall hear evidence of an overvaluation of the property sold to the company, from whatever cause such excess of valuation was produced. He has further decided, that evidence may be taken by the master of the actual cost of the factory and machinery to the appellant, and of the real and fair value of the spindles at the time of the sale; and all the exceptions taken by the appellant's counsel to the master's report, were overruled, and,

also, the third exception taken by the respondents' counsel. The principle adopted by the Chancellor is, that the trustees of the company were not the agents or trustees of the individuals composing the company, and that, although the company was bound by their acts, the individuals were not.

IN ERROR.
........
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

This Court did not intend to decide, on the former appeal, what constituted the appellant's debt, or whether the respondents were precluded from questioning the amount of it. The former decree of the Court of Chancery, which came under consideration upon the first appeal, had not decided upon that debt, nor had any principle been adopted in that Court, deciding whether the liquidation of the debt by the company might be impeached or not. This Court declined hearing arguments upon those points, and confined itself solely to the question, whether the corporation was dissolved or not; and, if so, whether the respondents were not liable by force of the statute to pay that debt when ascertained. The questions now come up, for the first time, whether, from the pleadings and proofs in the cause, the judgment rendered in favour of the appellant against the company is binding and conclusive on the respondents in their individual capacity; whether sufficient foundation has been laid by the pleadings for opening the judgment, and the accounts on which it is founded; and whether the respondents can be permitted to show, before a master, a material overvaluation of the property sold by the appellant to the company, for any cause.

These inquiries involve the construction of the seventh section of the act relative to incorporations for manufacturing purposes. (1 N. R. L. 247.) That section enacts, " That for all debts which shall be due and owing, by the company, at the time of its dissolution, the persons then composing such company shall be individually responsible, to the extent of their respective shares of stock in the said company, and no further."

This Court decided, on the former appeal, that the case contemplated by the statute had occurred, that the company was dissolved, and that the respondents were chargeable with the debt due from the company to the appellant, to the extent of their respective shares of stock in the com-

IN ERROR.

ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

pany. I perceive no escape from the conclusion, that the respondents are individually liable, to the same extent that the company itself was liable. Whatever was a debt against the company, is now, by force of the statute, a debt against them; and if the company itself was concluded, the respondents are equally concluded. As an abstract proposition, it is undoubtedly true, that the trustees of the company were not the trustees or agents of the individual stockholders. The trustees could not bind the individual members beyond the funds of the company, with this qualification, that they could bind the individual stockholders, in the event of the dissolution of the corporation, to the extent of their respective shares, and no further. It is, on this principle, and on this distinction, that the trustees were, in the event which has happened, the agents of the stockholders. His honour the Chancellor was of opinion, on the former appeal, that the trustees were, to a certain extent, the agents of the stockholders, for he held, that the resolutions of the trustees were a compact between the representative and constituent, between the trustees and the stockholders, and he decided, that they might, therefore, avail themselves of resolutions, to which, in no other sense, were they parties. This principle was adopted and approved by this Court, with the qualification, that such resolutions must be fair and equitable, and not founded in fraud. This Court gave effect to a resolution, passed with the appellant's assent, to accept *fifty per cent.* on the shares, while they refused to give effect to a resolution, subsequently passed against the appellant's assent, absolving the stockholders from all further payments, on their paying *thirty per cent.* on the ground that it was a legal fraud.

I must, conclude, therefore, that the respondents are chargeable with the appellant's debt, on the principle that the trustees, as their agents, have contracted this debt, and because the statute fixes their liability. The respondents cannot, therefore, impeach the consideration of the debt, in any other manner, nor on any other ground than any principal can be allowed to impeach a debt contracted by his legally authorized agent. If, then, it has been shown, that the sum claimed as a debt was fraudulently enhanced,

or that the liquidation of the account is either fraudulent or founded in error, provided a foundation has been laid for such proof, the respondents would be entitled to relief. And, we must regard the judgment as a solemn admission merely, on the part of the company, of indebtedness, for it is not of itself, as *res judicata*, binding on the stockholders, if it was procured by fraud, or is founded in error. I do not perceive the necessity of a cross bill for this purpose. The appellant has minutely stated in his bill the origin and consideration of his debt, and the manner of its final liquidation; and it was competent to the respondents, in their answers, to impeach it for the causes I have stated. But they were bound, if such was their purpose, to specify in their answers the particular facts on which they relied. It is a just and well established rule, both in law and equity, that matter in avoidance must be stated with precision and certainty, so that the opposite party may not be surprised by evidence unwarranted by the pleadings.

This brings us to the inquiry, whether the respondents have, in their answers, set up fraud and imposition in contracting this debt, or error in the settlement of the account. We must bear in mind, that there are two transactions only to be investigated : the original sale of the factory and machinery, on the 7th of *February*, 1815; and the settlement of the appellant's account, in *November*, 1816, by a committee of the board.

The answer alleges, that when the report was made by *Crosby*, there were only 400 spindles, and not 912, and that they cost only 9 dollars each : That they were not worth more than 10 or 12 dollars, and not 16 dollars, as the plaintiff fraudulently procured them to be estimated. And again, the answer alleges, that the report of *November*, 1816, was not made from any examination by the persons who signed it, but on the appellant's statements, which were not warranted by the truth ; and that the factory and machinery were not worth, on the 7th of *February*, 1815, 24,000 dollars. And again, that the deed given by the appellant, contained covenants of seisin, and of a good right to sell ; whereas there were two mortgages on a tract of 200 acres of land, including the site of the factory, the one to *John*

IN ERROR.
.......
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

*Cope*, for 2,400 dollars; and the other to the *Washington Insurance Company*, for 12,000 dollars, which were then due, and carrying interest, and that these incumbrances were not disclosed, but concealed. These are all the suggestions of fraud in the sale, or error in the accounts, set up by the answers.

The factory was built, and in operation, some time before the sale to the company, and it was situated within a short distance of *Poughkeepsie*, where the respondents reside. Before the purchase was made, the company, by resolution, instructed their treasurer and secretary, to confer with the appellant, and report at their next meeting at what price the company could purchase of him the land and factory, stock and materials, then belonging to him. On the 7th of *February*, Mr. *Crosby*, the treasurer, reported, in the absence of the secretary, that he had conferred with the appellant, and that the factory, in its then present state, and all the rights vested in the appellant, and *which ought to belong to the factory*, with two acres of land, on which it was built, ought not to be purchased by the company at a greater sum than 30,912 dollars; and he presented a detailed statement of the several items, making the aggregate amount. The report does not state that 912 spindles were in operation, but states merely 912 spindles, at 16 dollars, 14,592 dollars.

It appears, from the evidence of many witnesses, and, among others, from the depositions of *Stafford*, *Cunningham*, *Herrick*, and *Schenck*, that the spindles were not overcharged. They estimate them as worth from 15 to 17 dollars. It does appear that the appellant had engaged them at 10 dollars; but *Aaron Stafford*, with whom the contract was made, testifies, that 480 were then in operation, and 432 more were preparing, and under good way; and that the appellant, in consideration of the appreciation of the price, had agreed to give him 12 dollars instead of 10 dollars, and had also agreed to give him what the company gave. The report then did not misrepresent the state of the spindles, for there were 912 in operation or to be put in immediate operation; and the report evidently alluded to this, in speaking of " the rights vested in the appellant, and which ought to belong to the factory;" and as to the price, it was the fair medium value.

It is not proved that the appellant agreed to sell the factory and machinery at what it cost him, nor is this alleged in the answers. The allegation is, that they were not worth 24,000 dollars on the 7th of *February*, 1815, and this would be decisive against the suggestion, were it really so. Mr. *Tallmadge* testifies, that after the incorporation, a conversation took place in regard to taking the factory of the appellant, and he offered that the company should have the factory and machinery at what they had cost him; and the appellant intimated, that he should consider that an allowance was to be made to him for his personal services and attention in building the factory, as he had given his entire time and services to it, for two years and upwards, and said, he should claim 1,000 dollars. That the conversation was loose, and without any conclusion, and a committee was appointed to examine the factory and report as to the value, which was accordingly done ; that after the report, a considerable conversation took place respecting it, in the course of which the appellant said, that the sum reported was below what the factory had cost him, and it being objected that the amount was greater than had been expected, the appellant said, he should submit to the report, but would prefer having the report set aside, and have the value fixed by indifferent men, to be bound by their decision, and that he should be a gainer by such valuation, believing it would be made at a higher sum than that reported by the committee. That the board inclined to hold to the report of the committee, which was unanimously adopted by the trustees. Mr. *Tallmadge* says, he considered the sum at which the factory was taken not to be higher than the first cost, which opinion was founded on the appellant's representations before stated. I perceive no pretext for saying, that the appellant was guilty of any misrepresentation or concealment as to the value of the property sold by him ; it was all visible, and the respondents and their committee had ample means of examining and judging for themselves; and whatever may have been said preparatory to the consummation of the bargain, it is very certain that the trustees acted on the report of their treasurer. The subscription to the stock took place after the agreement by the trustees to purchase; and if the stockholders, with their eyes open, and

IN ERROR.
.......
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

the means of information at hand, were content to become members of the corporation, without due consideration, or examination, they must ascribe their losses to their own want of prudence and caution. But we do not hear a lisp of complaint, until the events of peace had materially changed the aspect of affairs, and rendered the stock less valuable; and even after that period, we find the stockholders paying up calls on their stock, without any objection that they had been defrauded; and, indeed, there is no trace of any complaint as to the fairness of the transaction of sale, until the concerns of the establishment were overwhelmed with ruin; and, even in their answers, the respondents do not pretend that the factory and machinery were agreed to be sold at what they cost the appellant.

To admit proof, at this period, that the factory and machinery were not worth what was agreed to be given, would violate every principle of reciprocity. The contract is executed, and the appellant is finally concluded as to price. Had political events terminated differently, it appears, from all the evidence, that the speculation would have been a profitable one. Can it then be seriously urged, that because events have turned out unpropitiously, the respondents, who took their chance in those events, shall not abide the loss? Besides, the respondents have ratified the acts of the trustees, by subscribing for the stock, by paying repeated calls, and by their entire silence for so long a time in making any complaint of the purchase.

It has been urged, that several of the stockholders and trustees, who took a principal agency in making the contract of purchase, have become insolvent, and have ceased to have any interest in the result of the cause. They were not insolvent when the affairs of the company were confided to their management, and they have not been charged with any fraudulent combination with the appellant, to betray their trusts and defraud the other stockholders. They were, themselves, deeply interested in making the purchase, on the best terms they could; and this consideration refutes any suggestion, that they consented to an overvaluation of the property, or that they did not consider it to be worth what they gave; and I cannot but repeat what was said on a former occasion, "the charge is so destitute of foundation, that

it does not deserve a serious refutation." On this branch IN ERROR.

ALBANY,
Nov. 1822.

SLEE
v.
BLOOM. of the subject, my opinion is, that the sale and purchase, founded on the report of Mr. *Crosby*, of the 7th of *February*, 1815, is binding and conclusive on the respondents in their individual capacity, and that no foundation has been laid for opening that transaction, which has not been sufficiently and fully removed by the proofs.

With respect to the appellant's account, adjusted by a committee of the trustees, on the 5th of *November*, 1816, many exceptions have been taken, not warranted by any allegations in the answers. *Herrick* and *Cunningham*, who settled that account, have not been interrogated in relation to it, whether the items were correct, nor on what principles it was adjusted. It is, therefore, evident, that the exceptions now taken, were not thought of when the witnesses were examined. If I could discover any principle, on which that account could be re-investigated, I should readily assent to it ; but there is no ground laid for such re-examination in the pleadings. It is no where alleged, that any particular items of that account are false, or that the charges and credits are erroneous. It is generally stated, in Mr. *Bloom's* answer, " that it was not made from any view or inspection, by the persons who signed the same, of the state of the factory, or accounts of the appellant, but was made on certain statements and allegations of the appellant, not warranted by the truth of the facts, and represented a balance not due to the appellant, and, therefore, ought not to be binding on the respondents ; for the factory, machinery, &c., as the same were situated on the 7th of *February*, 1815, were not worth 24,000 dollars."

The only issuable facts, set up by this answer, are, that the account was made out without any view or inspection by the persons who signed it, of the state of the factory and accounts, and that the factory and machinery were not worth 24,000 dollars, on the 7th of *February*, 1815. *Nathan Moulthrop* testifies, that exhibit C. contains the items referred to in exhibit B., and that all the articles in exhibit C. were examined by *B. Herrick*, as a committee of the company, and were found in and about the factory. I forbear to add any thing to what has been said on the last fact, the value of the factory and machinery. Here, too,

IN ERROR.
.......
ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

we must remember, that the committee, who settled that account, were personally interested in reducing the amount due the appellant as low as they could; and we find, in exhibit D., that they made two deductions, amounting to 684 dollars, on the first purchase. In addition, *Cunningham* states, that the account was made out with care, that the balance was reported to the trustees, who approved of the report, after making another deduction of 950 dollars, which balance, he says, so adjusted, was considered a final balance due to the appellant from the company. *Herrick* fully concurs in this statement. From all these considerations, I perceive no grounds to consider the accounts, thus settled, liable to be re-opened. The balance, thus settled, the trustees, afterwards, confirmed, by giving a bond for its payment, and, when sued on that bond, they confessed judgment; and it is worthy of remark, that some of the very persons, who took an interest in urging the giving this bond, and confessing the judgment, seek to set the whole aside as a gross imposition.

I cannot think, that the course adopted, of referring to the master an examination into facts that went to the merits of the cause, and, with respect to which, proofs had been taken in chief, in the usual way, was a correct or proper procedure. If the respondents are concluded from an examination into the original purchase of the factory and machinery; and, if they are, in like manner, concluded from opening the account, either from the imperfection of their answer, or from the proofs in the cause, there was nothing to refer to a master on these points. I do not understand, that facts, which relate to the *gist* of a controversy, which the plaintiff is bound to prove, to entitle himself to relief, or which a defendant is bound to prove, in avoidance or discharge of the demand, are ordinarily referred to a master. Matters of account are thus referred, when the principles upon which they are taken have been previously settled by the Court. My conclusion, as regards the account of the appellant, is, that there is no foundation laid, by the answers, for impeaching it, which has not been fully and satisfactorily met and repelled; and that, consequently, the appellant's debt against the company, of 23,493 dollars 35 1-2 cents, must be considered as conclusively established at that

amount; and this balance must be considered as con-      IN ERROR.
clusive and binding on the respondents in their individual      ········
capacity, according to their respective shares of stock.      ALBANY,
Nov. 1822.

With regard to the two mortgages, there is no foundation
for the allegation that they were concealed from the compa-      SLEE
ny or stockholders.  The proof shows, that they were known      v.
to several of the stockholders, and that negotiations were      BLOOM.
entered into for the assumption of them by the company.
The land mortgaged included 230 acres, exclusive of the
site of the factory, and these 230 acres were then consider-
ed to be worth 25,000 dollars, a sum amply sufficient to
pay off the mortgages.  It has been urged, that the appel-
lant violated his warranty, in the deed to the company, in
consequence of the prior sale to *Reid*, of a water privilege
for a paper-mill.  This formed no part of the defence set
up in the answers; and the proof in relation to it, was irrele-
vant and inadmissible.  Had it been alleged, possibly it
might have been shown, either that the fact had been made
known to the company, or that it was not injurious, from the
abundant supply of water.  We cannot now notice the proof.

I am, upon the whole matter, for reversing the Chancel-
lor's decree, in overruling the 2d, 4th, the addition to the 4th,
and 5th exceptions, taken by the appellant's counsel to the
master's report; and, I am, also, for reversing the decree,
allowing the 1st and 2d exceptions, taken by the respon-
dents' counsel to the master's report; and am in favour of
a decree, carrying the principles I have stated into effect.

A majority of the Court* being of the same opinion, it      * *Nov.* 18th.
was, thereupon, " ORDERED, ADJUDGED, and DECREED, that      For affirming in toto, 8. For
those parts of the decree of the Court of Chancery, by      reversing in part, 16.
which the second, and fourth, with the addition to the fourth,
and fifth exceptions, taken by the appellant to the report of
*Murray Hoffman*, Esq., one of the masters of the Court of
Chancery, are overruled; *and*, also, by which the first and
second exceptions taken by the respondents to the report of
the said master, are allowed; *and*, also, all those parts of
the said decree which arise from, and are in consequence
of the overruling of the said first mentioned exception, and
which arise from, and are in consequence of the allowing of
said last mentioned exceptions, be reversed; and that the

IN ERROR.

ALBANY,
Nov. 1822.

SLEE
v.
BLOOM.

said cause be remitted to the said Court of Chancery, and that the said Court enter a decree against all of the above named respondents, according to the former decree of this Court, in this cause. That the said respondents respectively pay to the appellant, towards the discharge of his judgment and costs in the Supreme Court against the *Dutchess Cotton Manufactory*, in the pleadings and proofs mentioned, the amount of their respective shares of stock in said company, of 100 dollars each share, or so much thereof as shall be necessary to pay the amount due on the said judgment, when such amount is ascertained; and that the condition of the bond on which said judgment is founded, and which is, also, in the said pleadings and proofs, be considered as conclusive evidence of the amount due from the said *Dutchess Cotton Manufactory* to the appellant, at the time the same was given, according to the terms of the said condition. But the amount of any payment which has been made by the *Dutchess Cotton Manufactory* to the appellant, since the twenty-second day of *November*, in the year one thousand eight hundred and sixteen, at which time the said bond bears date, is to be deducted from the amount so due to him; and from the amount of the several sums to be paid by the respondents, as aforesaid, there is to be deducted such amount as shall appear to have been paid by them, respectively, upon their respective shares of stock in said company. *And inasmuch* as it appears, that the appellant has assumed thirty shares of said stock, formerly belonging to *James Tallmadge*, jr., ten shares formerly belonging to *Aaron Stafford*, and ten shares formerly belonging to *Robert Stafford*, the same are to be considered as contributing, in discharge of the appellant's said debt, to the amount now due on said shares so assumed, or in such proportion as the respondents are respectively required to pay upon their shares; *and*, if it shall appear, that the said *Cyrenus Crosby*, *Albert Cocks*, and *George Bloom*, or either of them, are creditors to the appellant, as they have asserted, and have demands which ought, in justice, to be set off towards the demands of the appellant, and which are susceptible of adjustment before a master, such set-off is to be made in their favour."