### C. W. HUNT vs. JAMES GORDEN.

1. PARTNERSHIP: *Chancery practice. Account.*
   A partner who impleads his associate for a settlement must aver and prove, if denied, an indebtedness, or at least a probable indebtedness. The court should not compel the defendant to go into an accounting unless there appears to be something due to the complainant, and the facts which entitle complainant to relief must be proved before a reference to the master is made. In making a reference to have an account taken the court ought to settle the principles and put them in the form of instructions to its officer.

2. SAME: SAME.
   An action of account at law will lie, at the suit of one partner against another, which will refer the matter of difference to auditors, who may examine the parties on oath. But this action has fallen very much into disuse on account of the superior advantages of equity courts.

APPEAL from the Chancery Court of *Pontotoc* County.
Hon. AUSTIN POLLARD, Chancellor.

The opinion of the court contains a sufficient statement of the case.

Errors are assigned as follows :

1. The decree of the court is entirely unsupported by the evidence in the cause.

2. There should have been a decree for an account.

*Potter & Green*, for appellant :

Filed a written argument on the facts of the case, and insisted that the proof sustained the allegations of the bill, and showed that the complainant was entitled to the relief sought, and there should have been an account taken.

*Frank Johnston*, for appellee :

Filed an argument on the facts in the case, insisting that the proof was insufficient to support the allegations of the bill, and that there was nothing due to the complainant, and that there was no error in the action of the court in dismissing the bill.

SIMRALL, C. J., delivered the opinion of the court.

Hunt and Gorden formed a partnership to carry on a plantation in Coahoma county, in the year 1860, on joint account. The terms were reduced to writing, and so far as they bear upon this suit are, substantially, that each party was to furnish twelve hands, the needed number of work-stock and implements of husbandry, to be employed in the cultivation of Gorden's plantation, which should be under the control and management of Hunt, each to bear an equal portion of the expenses incident to the business ; the crop made to be equally divided, with the understanding that Hunt may, if he chooses, " return at the end of the year to Gorden, out of his part of the corn, as much good corn as will amount to one-half the good corn now on said place."

Hunt also agreed to deaden 100 acres of forest, and to have repaired the lots and fences in a manner sufficient to secure the crop. Hunt exhibited this bill, claiming that Gorden is indebted to him, and craving that the account may be settled

between them and that he may have a decree for any balance ascertained. On final hearing, on the pleadings and proof, the bill was dismissed, and Hunt has brought the case to this court for review.

The complainant charges that he made sundry expenditures for implements, necessary clothing, medicines, repair of gin, corn, hay, meat, and other incidentals, which have not been reimbursed to him, or in any manner accounted for, by Gordon, who is responsible for a just proportion of these outlays. They are detailed in the bill. One item is a lot of corn purchased from a flat-boat, which, with charge of delivery, amounted to over $300. Hunt also claims that Gorden is responsible to him for one-half the corn raised on joint account and left on the plantation. The testimony as to this item is conflicting. Camp, who took charge of the plantation the 1st of January, 1861, for Gorden, says that Hunt agreed to give up his interest in the corn in consideration that he would gin out and haul to the river landing the remnant of the cotton crop. It would seem that of this remnant there were only a few bales—four or five—to which the alleged agreement applied. But there was also testimony, which would seem to us to preponderate, that the agreement was that the overseer should pick out, gin, and bale, and deliver at the landing, the remnant of the cotton in the field, as well as bale and haul that already picked out, for Hunt's interest in the corn, estimated at about 1,000 bushels, worth about $500.

There is testimony which strongly tends to show that the corn which Gorden had on the plantation, and which was to be used by Hunt, had been produced from late planting, after the overflow had subsided; was unripe, soured, and become unfit for use for bread, or food for work animals, and was, by direction of Gorden, fed to his hogs. Without pursuing the examination further into the character and merits of the several items which make up Hunt's claim for adjustment, it suffices for the exigencies of this case to say that the matters in dispute have never been settled; that it is very probable that

something is due the complainant. The amount, however, cannot be definitely known until there has been an accounting.

We proceed to the inquiry whether, in these circumstances, the chancellor did right in dismissing the bill.

The chancellor proceeded on the ground that it was manifest from the pleadings and proof that nothing was due the complainant. After a careful reading of the testimony and pleadings, we do not concur in that conclusion.

A partner who impleads his associate for a settlement must aver and prove, if denied, an indebtedness to himself, or at least a probable indebtedness.

If the proofs show clearly nothing due the complainant, and that no relief beneficial to him can be granted, why compel the defendant, against his objection, to go into an accounting? "A decree shall not be made to account unless an indebtedness appears." Stamps & Moore v. Bray, 1 How., 314. In matters of account between partners there is, in many cases, a concurrent jurisdiction with the courts of law.

An action of account at law will lie, at the suit of one partner against another, which will refer the matter of difference to auditors, who may examine the parties on oath. Co. Litt., 171 a; Duncan v. Lyon, 3 Johns. Ch., 360. This action has fallen very much into disuse on account of the superior advantages of the equity forum.

The general rule is that the facts which relate to the gist of the action, and which the plaintiff is bound to prove to entitle him to relief, must be proved in the first instance, before the reference is made. Slee v. Bloom, 20 Johns., 689. The subject of the reference, and the object intended, is to work out the details for the aid and information of the court. This is especially so in controverted accounts. Hast v. Ten Eyck, 3 Johns. Ch., 513. But the court ought to settle the principles and put them in the form of instructions to its officer.

We are of opinion that the chancery court, instead of dis-

missing the bill, ought to have referred it to the master to state an account.

Decree reversed, and cause remanded for further proceedings as indicated.