OSKALOOSA SAVINGS BANK, Appellant, v. MAHASKA COUNTY STATE BANK, Appellee.

MAY.15, 1928.

*Clark, Byers & Brunk* and *J. G. Patterson*, for appellant.

*Devitt & Eichhorn* and *Preston & Preston*, for appellee.

ALBERT, J.—Before the taking of evidence in this case, defendant moved the court to first try and determine the issue as to whether plaintiff was entitled to an accounting, and to deter-

mine separately that question and the question of jurisdiction. This motion was sustained, and, as no question is raised as to the correctness of this ruling, we assume that the case was tried on this theory. The controlling question, therefore, is whether or not, under the showing made, plaintiff was entitled to have an accounting.

Plaintiff bank had the experience of many banks in this state during the period of deflation. Deposits decreased, much of the paper held by the bank became worthless, the reserve became too low to continue business, and it had borrowed all the money it could.

In December, 1921, the directors had guaranteed $35,000 of paper in the bank. Before the date of transfer, January 19, 1922, withdrawals were very rapid, and at that time the excess loans amounted to $107,000. The plaintiff bank had solicited defendant bank to take it over, and this had been refused. The bank was in such a condition at the close of business on Saturday, January 17, 1922, that it was apparent to all parties concerned that it was insolvent, and could not continue business. The state banking department had investigated it on several occasions, and so advised. Efforts were made to have the other banks in the city take it over, but all refused. On Sunday, January 18, 1922, a conference was had among all the bankers in the city of Oskaloosa. The other banks in the city finally advanced the proposition that they would pay $20,000 (afterwards raised to $24,100) as a bonus to the defendant bank, if it would take over plaintiff bank. At that time, representatives of all of the banks in the city went over the paper of the plaintiff bank, and they uniformly agreed that of this paper about $130,000 was bad, $40,000 was doubtful, and $84,000 was slow. An assessment of 100 per cent was to be made on the stock of plaintiff bank, and turned in as part of the property to be taken over by the Mahaska County State Bank. The Mahaska County State Bank finally accepted this proposition, and an agreement was made between the plaintiff bank and defendant bank, by proper resolution of the directors of both banks, a part of which reads as follows:

"Resolved that the directors of the Oskaloosa Savings Bank of Oskaloosa, Iowa, are hereby authorized to sell the assets of the bank upon such terms and conditions as they may see fit.

* * * Now, therefore, be it resolved: That the entire assets of the Oskaloosa Savings Bank be sold, assigned and transferred to the Mahaska County State Bank of Oskaloosa, Iowa, upon the agreements and for the consideration following:

"Said assets shall be guaranteed by this bank in its corporate capacity to the full extent necessary to cover all the liabilities to be assumed by the Mahaska County State Bank of Oskaloosa, Iowa. The Mahaska County State Bank shall accept and receive said assets and shall assume the payment of all liabilities on account of demand deposits, savings deposits, time deposits, rediscounts and bills payable of this bank (Oskaloosa Savings Bank) as shown by its books and records at the time of the transfer."

The resolutions of the Mahaska County State Bank in part read as follows:

"Whereas certain negotiations have been conducted for the purchase by this bank of the assets of the Oskaloosa Savings Bank of Oskaloosa, Iowa, for the sale of which authority therein has been given by its stockholders under the terms of the resolution duly and regularly adopted. Now, therefore, be it resolved: That the entire assets of the said Oskaloosa Savings Bank of Oskaloosa, Iowa, be purchased by this bank upon the terms and for the consideration following:" (Here follow the same specifications as above set out in the resolution of the Oskaloosa Savings Bank.)

It then acknowledges the receipt of the assets of said bank by the Mahaska County State Bank, by whose officers and directors the same have been received and were held for the purpose of incorporating the same in the general assets of the Mahaska County State Bank.

Pursuant to these resolutions, the possession of all of the property of the Oskaloosa Savings Bank was taken by the defendant. Under the resolutions of the Oskaloosa Savings Bank, R. M. Boyer, cashier, was designated as the officer to make proper and necessary indorsements on and transfer of all of the assets of the plaintiff bank. These included the real estate, furniture, and fixtures of the bank, which were agreed to be properly transferred to the Mahaska County State Bank. The agreement also contained the following:

"In the event of any disagreement between or among the

parties to this contract or of those interested in this contract or acquiring any benefits therefrom, with reference to the contents therein or from any controversy accruing out of the sale or the consummation thereof, and in any such question the superintendent of banking of the state of Iowa shall be the sole and final judge of any controversy and all parties hereto and all others interested herein or acquiring any benefits therefrom shall be bound by this decision.''

This agreement bears date January 19, 1922, and was properly signed by the respective officers of the banks. In pursuance thereof, the Mahaska County State Bank took possession of all of the assets and property of the Oskaloosa Savings Bank on the last named date.

While these negotiations were pending, R. K. Davis, president of the Oskaloosa Savings Bank, in substance insisted that, if there should be a surplus over and above the amount necessary to pay the indebtedness of the Oskaloosa Savings Bank and a reasonable charge to the Mahaska County State Bank for handling this business, such surplus should be returned to the Oskaloosa Savings Bank. This matter seems to have been quite fully discussed, and was rejected. One C. A. Williams, a director of the Mahaska County State Bank, said to Davis, with reference thereto:

''If that is the way you feel about it, the deal is off. I am not going to be a party to take over this bank and having any man say that undue advantage has been taken of anyone.''

W. O. Reed, the bank examiner, then dictated a formal notice of the closing of the Oskaloosa Savings Bank. This matter seems to have been adjusted; and the contract above referred to, made between these parties, omitted any reference to this question of salvage. There is no question, under the record, that the Oskaloosa Savings Bank was utterly insolvent at the time in question, and for some time prior thereto.

The Mahaska County State Bank proceeded to liquidate these assets as rapidly as possible, and to pay the indebtedness to the Oskaloosa Savings Bank. Davis subsequently complained that he should have some salvage, and thereafter employed attorneys, and took the matter up with the attorney-general and the defendant bank.

In April, 1923, the Mahaska County State Bank, through

its proper officers, adopted a resolution, the material part of which is as follows:

"Whereas, the banking department of the state of Iowa desires that the rights and status of the Mahaska County State Bank and the Oskaloosa Savings Bank be finally fixed as between the said parties with reference to the taking over of the assets and business of the Oskaloosa Savings Bank by the Mahaska County State Bank, as of date of January 19, 1922, and whereas it is the desire of said banks to comply with the wishes of the banking department: therefore be it resolved by the board of directors of the Mahaska County State Bank: That all property in the hands of the Mahaska County State Bank as of the date of January 1, 1925, derived from the property turned over to the Mahaska County State Bank in connection with the taking over of said Oskaloosa Savings Bank above the amount necessary to pay the depositors and all bills payable and expenses and a reasonable charge for the closing up of the business of the Oskaloosa Savings Bank shall be turned over to the officers of the Oskaloosa Savings Bank if there is any such surplus on said date. In arriving at the amount of the assets of the Oskaloosa Savings Bank, the commissioner of banking shall fix what shall be considered as assets and the letter of the commissioner of banking submitted herewith shall embody what shall be set up as assets. * * * The superintendent of banking shall determine what is the amount of the charges to be allowed to the Mahaska County State Bank by way of compensation and expenses in connection with the closing of the business of the Oskaloosa Savings Bank.

"Resolved: That a copy of this resolution be forwarded to the president of the Oskaloosa Savings Bank and that whenever the above and foregoing resolution of the Mahaska County State Bank is accepted by the stockholders of the Oskaloosa Savings Bank at a meeting regularly called, agreeing to accept the above and foregoing in full settlement and satisfaction of any and all claims of the Oskaloosa Savings Bank or any stockholder of said bank as against the Mahaska County State Bank growing out of the taking over of the Oskaloosa Savings Bank by the Mahaska County State Bank, this resolution shall be in full force and effect, and shall be binding upon the Mahaska County State

Bank and the Oskaloosa Savings Bank and the stockholders of both of said banks."

On August 7, 1923, the stockholders of plaintiff bank accepted the foregoing proposition of the Mahaska County State Bank at a meeting, 402 out of 500 shares of the capital stock of the bank being present.

Shortly after January 1, 1925, public accountants went over these transactions, and made a report about February 1st, showing that the Mahaska County State Bank had not realized enough from the assets of the Oskaloosa Savings Bank to pay the indebtedness of the latter-named bank. The matter was then taken up by the superintendent of banking, and a day fixed, notifying all parties to appear at his office, to the end that this matter might be finally disposed of. In pursuance thereof, the Oskaloosa Savings Bank appeared by R. K. Davis and his attorney, and the superintendent of banking decided, among other things, that the Mahaska County State Bank should be allowed $15,000 compensation and expenses in liquidating the assets which came into its hands from the Oskaloosa Savings Bank. He further found from the report of Wolfe & Company, accountants, and a special examination made by his own department, that, on May 8, 1925, the date of this hearing, there was not sufficient property in the hands of the Mahaska County State bank derived from the property turned over in connection with the taking over of the Oskaloosa Savings Bank to compensate for the liabilities that were assumed,—namely, the various classes of deposits, expenses, and bills payable; that there was not at that time, nor was there on January 1st, any surplus to be returned to the officers of the Oskaloosa Savings Bank, such as was contemplated under the various contracts; and that the assets were insufficient was the only thing to determine at that time. This was the decision rendered by Robert L. Leach, superintendent of banking, on May 8, 1925.

While there is some question raised in argument as to the force and effect of the original contract between these banks, we do not think that it can be seriously doubted that the original contract was purely and wholly a contract of sale. It so recites in its terms, one resolution reciting that they "sell, assign and transfer" all of the property of the Oskaloosa Savings Bank, and the resolution of the Mahaska County State Bank reciting

that they "purchase" the same. The oral testimony of the witnesses on this proposition all corresponds with and supports this conclusion, and in fact Davis, in his testimony, refers to the same as "a sale." This matter is conclusive, under the record, and needs no further attention.

It is urged, however, that, this being a sale of all of the property of a corporation, it could not be considered valid because it was not ordered or directed at a meeting of the stockholders. We are not unmindful of the general rule that ordinarily the directors of a corporation have not the power to sell all of the corporate property without the consent of the stockholders or a majority thereof. The answer to this contention, however, is twofold: First, the record does show that the officers and directors of this corporation who participated in this sale owned a majority of the stock; and second, it is an exception to the general rule that, where a business is in a failing condition, and has become financially involved and insolvent, and the creditors are pressing their claims, the power of the directors to alienate the property is conceded, where it is regarded as of imperative necessity. See 4 Thompson on Corporations (3d Ed.), Section 2498, and cases cited.

In the light of this statement of the law and the facts in this case, it is quite apparent that the necessity of sale was here imperative. The corporation was concededly insolvent, and the creditors thereof would apparently receive much less than the amount due them if this bank were closed and went through receivership. All the creditors of the corporation would be paid in full by the sale of the property herein to the Mahaska County State Bank. It is obvious that the transaction originally contemplated inured wholly to the benefit of the Oskaloosa Savings Bank and its stockholders. Aside from Davis, the president, and one other stockholder, no complaint seems to have been made about the transaction. None of the other stockholders testified in the case, and we think that, under the circumstances existing, the plan adopted was a wise one, and strictly within the law.

While plaintiff in its testimony, in effect, concedes that the original contract was a sale, it is claimed that the same was merged and abrogated by the later action of the parties: to wit,

the adoption of the resolution of the defendant bank, heretofore set out, with reference to what should be done on January 1, 1925, as to assets still in its hands, and the acceptance of the same by the resolution of the plaintiff bank. It must be conceded that, if this contention of the plaintiff's is true, then the later contract did supersede the first. This court said in *South Texas Land Co. v. Sorensen*, 199 Iowa 699, 703:

· "When a subsequent contract completely covering the same subject-matter is made by the same parties to an earlier agreement, and the terms thereof are inconsistent with the earlier agreement, and intended to be substituted for it, a merger results."

We are not sure that we exactly understand the appellant's contention on this proposition; but, if we give to it its most favorable construction, it is that the latter contract superseded and abrogated the first contract between these parties, and in the consideration of this case, we have no right to rest any conclusion on the contents of the first contract. A comparison of these two contracts, however, shows quite conclusively that the situation in this case does not come within the general rule heretofore announced by us. There is much in the first contract that is in no way referred to or covered by the second. We are disposed to conclude, under the situation heretofore related, that these two contracts are to be considered and construed together; and in reaching such conclusion, we do not give any attention to the contention of the defendant that the second contract is wholly void for want of power on the part of the Mahaska County State Bank to enter into such contract, because we conclude that there are other controlling factors in the case which are decisive thereof, without considering the question thus raised.

Under what is called the "second contract" herein, it was in substance, provided that if, on the 1st of January, 1925, the Mahaska County State Bank had been fully compensated for all of its outlay in paying the indebtedness of the plaintiff bank, and also for its expenses and a reasonable compensation for its services in the matter, then any of the assets left in its hands would be returned to the Oskaloosa Savings Bank. This question was to be determined by the superintendent of banking; and, under the terms of the contracts heretofore referred to,

after notice to the parties, the superintendent of banking decided this question, and held that neither on January 1, 1925, nor on May 8, 1925, the date of his decision, had the Mahaska County State Bank been fully compensated and paid as contemplated by the contracts; and he further found that there were no assets in the hands of the Mahaska County State Bank to which the Oskaloosa Savings Bank was entitled. It must necessarily follow from this that the plaintiff has not carried its burden in this case of showing that it was entitled to an accounting.

Appellant, however, seeks to meet this situation by urging that it is not bound by the agreement to submit its differences and disagreements with the defendant to the superintendent of banking, and is not bound by the decision of the superintendent of banking. It is probably true that the weight of authority sustains the doctrine that the parties cannot oust the courts of their jurisdiction by embodying in a contract a stipulation that all disputes and controversies which may arise on the contract shall be submitted to arbitration, and that the award of the arbitrator shall be final. This seems to be the trend of our cases. *Gere v. Council Bluffs Ins. Co.*, 67 Iowa 272; *Prader v. National Masonic Acc. Assn.*, 95 Iowa 149; *City of Des Moines v. Des Moines Waterworks Co.*, 95 Iowa 348; *Harrison v. Hartford Fire Ins. Co.*, 112 Iowa 77. These cases, however, with many others which might be cited, were bottomed on the right of a party to such contract to revoke it at any time before decision had been reached or award made. We have found none of our cases, nor any from our sister states, holding that, where a matter of this character has been submitted and final determination made by the person specified in the contract, one can then revoke such agreement. In other words, this court has always held that, where a matter has been submitted and finally disposed of by the proper party, all parties are bound thereby. That appellant is bound by the decision of the state superintendent of banking herein is abundantly sustained by the decisions of this state. These cases are all gathered in the opinion written by Justice Stevens in *Ames Canning Co. v. Dexter Seed Co.*, 195 Iowa 1285. See, also, *Irwin v. Hoyt*, 162 Iowa 679; *Midwest Sec. Corp. v. City of Des Moines*, 200 Iowa 245. On the subject generally, see 5 Corpus Juris 41, 42, and 172.

The burden was on the plaintiff to aver and prove that there was something due it, before it was entitled to an accounting. 1 Corpus Juris 629; *Gould v. Barrow,* 117 Ga. 458 (43 S. E. 702); *Campbell v. Campbell's Admr.,* 8 N. J. Eq. 738; *Hunt v. Gorden,* 52 Miss. 194. In *Baker v. Tennent,* 108 Wash. 663 (185 Pac. 576), that court said:

"There will be no accounting, without showing that someone, either the appellant or creditors of the partnership, are going to be benefited by it."

It is our conclusion that plaintiff did not make such a showing in this case as entitled him to an accounting from the defendant. This is the conclusion reached by the district court. —*Affirmed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.