Harger *v.* McCullough.

## HARGER and another *vs.* McCULLOUGH.

Where a creditor at the request of the debtor and upon his express promise to pay the expenses, takes a journey to the residence of the latter with a view to settle the demand, and afterwards includes such expenses in a security taken for the debt, such security is not usurious.

The second endorsee and holder of a bill had obtained judgment against the drawers, and the second endorser who was liable on the paper paid the amount to the holder and received from him an assignment of the judgment; *held* that this was not an extinguishment of the debt against the drawers or the prior endorser.

The drawers were an incorporated company the stockholders of which were personally liable for its debts. *Held* that the assignee might use the name of the plaintiff in the judgment in an action to enforce the liability of a stockholder.

Where in such action the evidence to shew that the defendant was a stockholder when the debt was contracted was a proxy given by him shortly *afterwards* to vote at the ensuing annual election, the time for holding which was less than thirty days from the time when the debt was contracted, and by the charter the stockholders could only vote upon stock which they had held for thirty days preceding the election; *held* that the evidence was *prima facie* sufficient.

Stockholders who by the charter are "jointly and severally personally liable" for the debts contracted by the corporation are principal debtors and not sureties for the corporation, and therefore time of payment given to the corporation by a creditor does not discharge a stockholder who did not assent to the extension and who is subsequently prosecuted on account of his individual liability.

Whether in a suit against a stockholder to enforce his individual liability another stockholder is a competent witness for the defendant, *quere. Per* BRONSON, C. J.

THE defendant was sued as a stockholder in the Rossie Galena Company, and the action was tried in July, 1844, at the St. Lawrence circuit, before WILLARD, C. Judge. On the 22d of January, 1839, the plaintiffs sold to the Rossie Galena Company 75 barrels of pork and 30 bushels of beans for $1542,50, to be paid for in cash. But being then unable to pay, the company on the 24th of January gave the plaintiffs a note for the amount payable in twenty days at the Jefferson County Bank. The note was protested for non-payment, and taken up by the plaintiffs. After several communications on the subject of the debt had passed between the company and the plaintiffs, the company requested the plaintiffs, who resided in Jefferson county, to go to Ogdensburgh, where the company transacted its business, for the purpose of effecting a settlement of the claim, and

the company expressly agreed and promised to pay the plaintiffs for their trouble and expenses in making the journey. Accordingly one of the plaintiffs went to Ogdensburgh, when the matter was arranged by the company's giving the plaintiffs a bill of exchange drawn by the company on Barzillai Ransom, New-York, for $1600, which was dated March 29, 1839, and made payable to the order of John J. Gilbert three months after date; and the bill was endorsed by Gilbert the payee, and by George W. Shepard. The amount of the bill was made up of the original debt and interest on it until the bill would mature, the expense of protesting the note, which the plaintiffs had paid, and the sum of $7,50 for the expenses of the journey of one of the plaintiffs to and from Ogdensburgh.

The draft was protested at maturity in July for non-payment, and due notice was given to the drawers and endorsers. The plaintiffs afterwards sued the company, and recovered a judgment on the bill, which was docketed June 17, 1840. An execution was issued on the judgment, and returned *nulla bona*. The plaintiffs then sued Gilbert & Shepard, the endorsers of the bill, who had been duly charged. Shepard thereupon paid the plaintiffs the balance remaining due on the judgment—a part having been previously paid by the company—and took an assignment of the judgment, with authority to use the plaintiffs' names to collect the debt. The assignment was made and dated September 10, 1840. On the 15th of July, 1842, Shepard assigned the judgment to Stephen Storm. This suit was afterwards brought in the name of the plaintiffs for the benefit of Storm, the assignee.

To prove the defendant a stockholder in the company, the plaintiffs gave in evidence a written proxy or power of attorney which the defendant on the 28th day of January, 1839, gave to one Ransom, authorizing him to vote on the defendant's stock at an election of directors of the company to be held in February following. To this was annexed the defendant's affidavit, made on the same day, that the stock was not hypothecated, &c.

The defendant moved for a nonsuit on the following grounds:
1. The bill of exchange on which the suit is brought is void for

Harger *v.* McCullough.

usury, because $7,50 for the travelling expenses of one of the plaintiffs from Jefferson county to Ogdensburgh were included in the bill.

2. The payment of the debt to the plaintiffs by Shepard extinguished the judgment against the company, and the bill of exchange on which the judgment was recovered; and this suit cannot be maintained in the name of the plaintiffs for the benefit of Storm, the assignee.

3. The debt for which the bill was given was contracted on the 22d January, 1839; and it does not appear that the defendant was a stockholder until the 28th day of that month. And

4. The defendant as a stockholder is a surety, and he is discharged by the time which was given to the company—first, by taking the 20 day note; and, second, by taking the bill of exchange at three months.

The motion for a nonsuit was overruled and the defendant excepted.

The defendant offered to prove that the bill might have been collected of the company if the plaintiffs had prosecuted the company sooner than they did. The judge decided that that would constitute no defence, unless the defendant had requested the plaintiffs to proceed against the company. Exception.

The defendant called John J. Gilbert as a witness to prove that certain lead had been turned out to apply on this draft. It was admitted that Gilbert was a stockholder; and the judge rejected him as an interested witness. Exception. The lead in question was afterwards allowed by the direction of the judge as a payment on the bill. Verdict for the plaintiffs for the balance $1402,56. The defendant moves for a new trial on a bill of exceptions.

*E. Darwin Smith*, for the defendant.

*A. B. James*, for the plaintiffs.

*By the Court*, Bronson, Ch. J. We are referred to *Williams* v. *Hance*, (7 *Paige*, 581,) as an authority to prove the bill void

for usury. But in that case one half of the expenses of the cred-
itor's journey were included in the mortgage, when the journey
had not been made at the request of the debtor, nor upon any
promise to pay the expenses; while here the journey was
made at the request of the company, and upon its express under-
taking to pay the expenses. The $7,50 might have been recov
ered from the company although no arrangement in relation to
the original debt had been made. It was so much money paid,
laid out and expended for the company upon request; and was
as much a debt as was the original demand. There was no usury.

Shepard paid the plaintiffs and took up the bill as endorser.
Clearly that did not extinguish the bill as against the drawers,
or against Gilbert, who was a prior endorser. Shepard might
have sued either of those parties on the bill. But as a judgment
had already been recovered against the company on the bill,
Shepard took an assignment of the judgment, with authority to
use the names of the plaintiffs for his own benefit. There was
nothing objectionable in the transaction. It was a sale, and not
a satisfaction of the judgment; and I see no reason why Shep-
ard, or Storm, the last assignee, should not be allowed to use
the plaintiffs' names, with their consent, for enforcing payment,
either against the company or the stockholders.

Those stockholders only are liable who were such at the time
the debt was contracted. (*Moss* v. *Oakley*, 2 *Hill*, 265.) In
this case the original debt was contracted on the 22d of January,
1839, when the provisions were sold to the company; and it
does not expressly appear that the defendant was a stockholder
until the making of his proxy, which was six days after the sale.
But it will be seen from the charter that the annual election for
directors of the company is held on the first Monday of Febru-
ary; and that the stockholders can only vote upon shares which
they have held for thirty days preceding the election. (*Stat.*
1837, *p.* 445, § 3.) The power which the defendant gave to
Ransom to vote on his stock at the February election, afforded
presumptive evidence that the defendant had either then held
the stock for thirty days, or that he would have held it for that
period by the time the day for the election arrived. It is not to

be presumed that the defendant intended to do a wrong to the other stockholders, by voting when he had no right to do so. And if we go back thirty days from the time of the election, it will carry us to a date anterior to the contracting of this debt. The plaintiffs made out a *prima facie* case for charging the defendant as a stockholder, and the motion for a nonsuit upon that point was properly overruled.

The charter makes the stockholders " jointly and severally, personally liable for the payment of all debts or demands contracted by the said corporation." ( § 9.) But they cannot be sued until a judgment has been recovered against the corporation, and an execution has been returned unsatisfied. (§ 10.) As between themselves, we have regarded the stockholders as standing in the character of partners. (*Moss* v. *Oakley*, 2 *Hill*, 265 ; *Bailey* v. *Bancker*, 3 *id.* 188.) But in reference to creditors, they have been spoken of as guarantors or sureties of the company. (*Moss* v. *McCullough*, 5 *Hill*, 131.) If they are to be regarded in all respects as sureties, then it is quite clear that the defendant has been discharged by the acts of the plaintiffs, who have twice given time to the company without his consent. But I think the stockholders in their individual, as well as their corporate capacity, are principal debtors. Although they have been incorporated with many of the privileges usually granted to men associated in that form, yet the privilege of. exemption from personal liability for the debts of the company has been denied to them, and their personal liability has been expressly declared. They are thus placed, in relation to the creditors of the company, upon the same footing as though they were an unincorporated association, or partnership. That is the view which was taken of the question under a charter of the same nature in *Allen* v. *Sewall*, (2 *Wend.* 327,) and although that judgment was reversed, (6 *id.* 335,) yet upon this point the members of the court of errors who delivered opinions agreed, substantially, in the doctrine which had been laid down by this court. And in *Moss* v. *Oakley* we considered the stockholders liable in the same manner as though they had gone on with the business

as an unincorporated association, which is nothing but a partnership. And this doctrine was practically applied in *Bailey* v. *Bancker*, where we held that one member of the association or partnership could not sue another for a debt due from the company. I consider the legislature as saying to those who applied for the charter, "you may have a corporate capacity for the convenience of transacting business, and the facility of transferring your respective interests in the joint concern; but you shall remain liable to the creditors of the association in the same manner, substantially, as though you had not been incorporated." In one respect the burden was made more onerous than it would have been in going on without a charter; for the copartners are *severally*, as well as jointly liable. But that does not affect the principle. Nor is it affected by another provision, which lightens the burden, by saving the stockholders from an action until the creditor has attempted to collect the money from the corporation by proceeding to a judgment and execution. The stockholders are debtors from the beginning, although the creditor has no remedy against them until be has first tried to collect from the company. This is no more than applying an equitable principle, which requires that the debts should be paid from the joint funds of the associates, rather than from the separate property of any one of them. I think the defendant was answerable to the plaintiffs as a principal debtor; and consequently that he was not discharged by giving time to the company.

As the defendant is not to be regarded as a surety, it follows that the offer to prove that the debt might have been collected from the company was properly overruled. Indeed, if the defendant had been strictly a surety, the offer amounted to nothing, without coupling with it an offer to show that the plaintiffs had been requested to proceed against the company.

In *Pierce* v. *Kearney*, (5 *Hill*, 82.) Gilbert, a stockholder, was called by the plaintiff in a suit against another stockholder; and we held him incompetent on the authority of *Marquand* v. *Webb*, (16 *John*. 89.) Gilbert has now been called by the defendant, and been rejected as also incompetent on that side.

It is hardly possible that both of these decisions should be right. But I am glad to find that it is not now necessary to enter upon the discussion of this vexed question. Gilbert was called for the sole purpose of showing by him that the value of certain lead ought to be applied in part satisfaction of this debt; and if he was improperly rejected, the error was subsequently cured by allowing the lead in part payment of the debt.

New trial denied.