Saratoga General Term, November, 1849.  *Paige, Willard, and Hand,* Justices.

## Moss *vs.* McCullough.

In an action against a stockholder in the Rossie Lead Mining Company, to recover a debt contracted by the company, a judgment previously recovered by the plaintiff, against the corporation, upon the same demand, is *prima facie* evidence of a debt against the defendant; but subject to be impeached for collusion, or mistake.

With the exception of cases where fraud or mistake have occurred, a judgment against the corporation, or the liquidation of a debt by the officers of the company, is as obligatory upon the individual stockholders, when they are sought to be charged, as it is upon the corporation itself.

A corporation whose business, according to its charter, was " the raising and smelting lead ore or galena," confined itself for several years after the granting of its charter, to *raising* the ore, the *smelting* being performed for them by M. & K. under a contract.  In October, 1839, the directors deeming it for the interest of the company to carry on both branches of the business, themselves, purchased of M. & K. their smelting works for $15,000, for the payment of which, at a future day, the company gave their promissory notes.  In an action against a stockholder upon one of those notes ; *Held,* that the directors had authority to make such purchase, and to give the notes of the company for the purchase money ; and that such notes were valid and binding.

What is sufficient evidence, to be submitted to the jury, in such an action, as to the authority of the directors to make the purchase, and to give the notes of the corporation for the purchase money.

Evidence of the recovery of other judgments against the company, on notes given by its officers, is admissible as persuasive evidence that the officers had authority to give the notes.

If a portion of the consideration of the note sued on, accrued before the defendant was a stockholder, that portion alone should be deducted from the note, and the plaintiff have a judgment for the balance.

A stockholder in an incorporated company, who is liable for the debts of the company to the amount of the stock held by him, does not stand in the light of a guarantor or surety, but is a principal debtor.

This action was commenced by the plaintiff in 1841, against the defendant, as one of the stockholders of the Rossie Lead Mining Company, under the 9th section of the act of May 12, 1837, incorporating said company, (*Laws of* 1837, *p.* 441,) to recover the amount of a promissory note alledged to have been made by the said company on the 9th of October, 1839, payable to the order of Moss & Knapp, one year after the date thereof,

Moss *v.* McCullough.

for the sum of $4050 ; and which note was duly endorsed and transferred to the plaintiff. The declaration was in debt, reciting the statute incorporating the company ; the making of the note by the company ; the recovery of a judgment thereon by the plaintiff, at the January term of this court in 1841, against the company, for $4142,21 damages and costs ; the issuing of an execution to the sheriff of the county of St. Lawrence, tested the 9th of Feb. 1841, and returnable in sixty days, indorsed to levy the said sum of $4142,21 and interest from the 8th of Jan. 1841, besides fees and poundage ; and that the said execution was, at the return day thereof, returned by the sheriff wholly unsatisfied. The declaration averred that the note upon which said judgment was obtained was the same identical note now sought to be recovered against the defendants ; and that the defendant, at the time of the making of the said note, was one of the stockholders of the said company. The declaration concluded in the usual form. The defendant pleaded *nil debet ;* and also three special pleas. On demurrer to the special pleas, judgment was given for the plaintiff in May term, 1842, with leave for the defendant to amend. There was also a notice of special matter annexed to the plea. The defendant did not amend. The cause was first tried before Willard, circuit judge, at the St. Lawrence circuit in July, 1842, under the general issue and notice, when the plaintiff obtained a verdict. A bill of exceptions was tendered, to the decision of the judge, which was decided by this court in May term, 1843, and a new trial was awarded. (*See Moss* v. *McCullough, 5 Hill's Rep.* 131.) The cause was tried a second time before the same circuit judge, at the St. Lawrence circuit, in 1843, when the plaintiff again obtained a verdict. The cause again went to this court on bill of exceptions, and in July, 1844, the decision of the circuit judge was concurred in by this court, and a new trial was denied. The cause was then carried, by the defendant below, by writ of error, to the court for the correction of errors ; which court, on the 31st of December, 1846, by a vote of 11 to 8, reversed the judgment of the supreme court, and awarded a *venire de novo.* The cause was tried the third

time by Justice Parker, at the St. Lawrence circuit, in August, 1848, when the plaintiff was nonsuited by the learned judge. The cause now came before the court on a bill of exceptions taken by the plaintiff to sundry decisions of the judge at the circuit, and particularly for nonsuiting the plaintiff.

*J. A. Spencer*, for the plaintiff. I. The evidence in this case showed that the officers of the Rossie Lead Mining Company had authority to make the purchase of property for which the note in question was given, and to execute the note. (*Laws of* 1837, *p.* 414. *Moss* v. *Oakley*, 2 *Hill*, 265. 5 *Id*. 131, 137. 7 *Cranch*, 299. *Story on Agency*, §§ 58, 69, 102. *Slee* v. *Bloom*, 20 *John.* 669. 3 *Hill*, 188. 1 *Denio*, 414. *Corning* v. *McCullough*, 1 *Comst.* 47.) II. The purchase, even if it be admitted to have been made originally without express authority, was ratified and adopted by the company, by the taking and using of the property for which the notes were given. (*See cases above cited.*) III. The consideration of the note was entirely lawful, and such as bound the company, and the defendant as one of its stockholders. The property bought was such as was suited to the business of smelting lead ore. This was a legitimate business of the company, as much so as that of mining. (*Laws of* 1837, 441, § 1. *Moss* v. *Rossie Lead Mining Co.*, 5 *Hill*, 137.) IV. At all events, it was not for the court to determine, as matter of law, whether there was proof of the authority of the officers to make the note; or whether the property bought was such as was suitable for the business of the company. These were questions which should have been submitted to the jury. V. That evidence showed that the note was valid, as against the company; and the individual stockholders could not impeach the validity of the note, except by showing fraud or imposition in obtaining it, or that it was founded in error. (*Slee* v. *Bloom*, 20 *John.* 669.)

*Jesse C. Smith*, for the defendant. I. The evidence given by the defendant was competent. (*Moss* v. *McCullough*, 5 *Hill*, 132; *Bonaffe* v. *Fowler*, 7 *Paige*, 576.) II. There was

no proof of any authority in Averill as president, and Judson as secretary, of the Rossie Lead Mining Company, to make promissory notes. (1 *R. S.* 602, 2*d ed.* § 6. *Angel & Ames on Corp.* *p.* 126, *c.* 7, § 7. *Dickenson* v. *Valpy*, 10 *B. & C.* 128. *The People* v. *Utica Ins.* 15 *John.* 383. *White* v. *Westport Man. Co.* 1 *Pick.* 215.) III. The officers of the company had no authority to make the purchase of the property for which the note was given. The consideration was illegal and not within the corporate powers of the company. (*Angel & Ames on Cor.* 242, *new ed.* *Wyman* v. *Hallowell and Augusta Bank*, 14 *Mass. R.* 58. *Salem Bank* v. *Gloucester Bank*, 17 *id.* 28. *Penn. Co. &c.* v. *Dandridge*, 8 *Gill & John.* 248. *Hodge* v. *The City of Buffalo*, 2 *Denio*, 110. *See opinions of Senators Lott and Putnam in court of errors in this case, and the cases cited in those opinions.*) IV. There was no proof of any ratification by the company, or its authorized officers. And if there were any such proof, the company could not ratify or adopt an illegal act. (*Wyman* v. *Hallowell and Augusta Bank*, 14 *Mass.* 58, 63. *Penn. Co.* v. *Dandridge*, 8 *Gill & John.* 248. *Livingston* v. *Lynch*, 4 *John. Ch. R.* 596, 597.) V. There was no dispute about the facts in the case. There was therefore no evidence of the execution of the note by the officers, which should have been submitted to the jury; and the question whether the property for which the note was given was appropriate for the legitimate business of the company, was a question of law for the court to decide. VI. The note in suit was not valid as against the company, and the individual stockholder has all the grounds of defense which the company might have to the suit upon the note, with the addition that he is surety only for the payment of the debts of the company; or is entitled to the benefit of the conditions precedent that the remedy has been exhausted against the company, or that it has been dissolved. (*Moss* v. *McCullough*, 5 *Hill*, 132; *opinions of Lieut. Gov. and Senator Putnam in this case, in court of errors.*) VII. The proof shows that a part of the consideration of the note arose before the defendant became a stockholder, and therefore the plaintiff can not recover on the note alone,

Moss v. McCullough.

without other counts in his declaration. (*Lawler* v. *Kershaw*, 1 *Moo. & Mal.* 93. *Whitehead* v. *Baum*, 2 *Moo. & Rob.* 248.) VIII. The case now presented is in no respect varied from the case presented to the court of errors, and decided by that court in December, 1846. The decision of that court reversing the judgment of the supreme court is conclusive and binding upon this court. The defendant is, therefore, entitled to judgment.

*By the Court*, WILLARD, J. · If the questions arising on the last trial, were substantially the same which arose on the trial in 1843, and which were passed upon by the court for the correction of errors, and if the decision of the learned judge, in nonsuiting the plaintiff, was the legitimate consequence of the judgment pronounced by the court of *dernier resort*, it would be most becoming in us to deny the motion for a new trial, and to leave the aggrieved party to his remedy in the court of appeals. But if, on the contrary, it shall turn out on examination, either that the learned judge in non-suiting the plaintiff did not properly carry out the views of the court of errors ; or if the majority of that court have not agreed upon any principle decisive of the cause, it will be necessary for us to examine the various questions upon principle, and to decide the cause according to our own opinions of the law. It becomes necessary, therefore, briefly to analyze the opinions of the members of the court of errors. Lieutenant Governor Gardiner expressed the opinion, that the circuit judge erred in refusing to submit to the jury the question whether a part of the consideration of the note did not accrue before the defendant became a stockholder ; and that for such refusal the judgment should be reversed, and a new trial awarded. He intimates also that the stockholder is a guarantor for the company, and that the action should be brought in the name of the original party to the note, and that this liability was not negotiable. His third objection to the ruling of the circuit judge is substantially like the first, viz. that there was evidence to show that a part of the damages which were included in the note accrued before the defendant became a stockholder. He inclined to the opinion that an en-

tire agreement could not be divided.  If the judgment of the supreme court was reversed for the first or third reason assigned by the lieutenant governor, Mr. Justice Parker should not have nonsuited the plaintiff, but have submitted the questions of fact to the jury.  And if the judgment was reversed for the second reason, it should have been final, and no venire de novo should have been awarded.

The opinion of Mr. Senator Lott decides, first, that the plaintiff did not show, on the trial, that the note in question was executed by the authority of the corporation.  2d.  That the evidence of its subsequent ratification was not sufficient.  3d. That the note was not obligatory upon the company because it was not given in the legitimate course of their business. They had no right to buy a farm, a school house or threshing machine, &c.  And 4th.  That the question whether a part of the consideration of the note accrued prior to the defendant's becoming a stockholder should have been submitted to the jury. A reversal of the judgment for the 1st, 2d or 4th reason, would not have concluded the judge trying the cause, unless the testimony was the same as on the former trial.  But the testimony on the last trial was much stronger for the plaintiff than on the preceding trial, and should, I think, have carried the cause to the jury on the principles contained in Senator Lott's 1st, 2d and 4th reasons.  A reversal for the third reason should have been final; because, if true, it showed that the plaintiff had no cause of action.

Mr. Senator Putnam, in his opinion, repudiates the notion of a guaranty, put forth by the lieutenant governor.  He thinks the plaintiff, in the first place, had not shown any authority in the officers of the company to give the note ; 2d.  That the defendant was not liable, because he was not a stockholder *at the time this suit was commenced ;* and 3d.  That the consideration of the note was illegal, as it was given in part for property which had no connection with the business of the corporation.  If the judgment was reversed for the first objection, there should have been a new trial; and if the testimony as to the authority to give the note was materially strengthened, the cause should

have been submitted to the jury. If it was reversed for the two last objections it should have been final.

Mr. Senator Barlow went for an affirmance of the judgment; thus concurring, in substance, with the supreme court. He also expressed the opinion that the judgment against the company finally settled every question as to the validity of the note, and that the defendant could not go back of that judgment and take issue upon .the liability of the company; thus concurring with Ch. Justice Spencer in *Slee* v. *Bloom,* (20 *John.* 669.) Seven other senators concurred with him.

The fact that a *venire de novo* was awarded affords decisive evidence that a majority of the court did not concur with the lieutenant governor in his second point, nor with Mr. Lott in his third, nor with Mr. Putnam in his last two. We have no means of determining upon which of the other reasons it was reversed. We must presume that it was reversed for a reason which the court thought could or might be obviated on a future trial; or they would not have awarded a *venire de novo.*

From this review of the decision of the court of errors, I am of opinion that this court is not concluded by the reversal of the judgment, but is at liberty to examine and decide the case upon principle.

On the trial of this cause the first time, before Willard, C. J., in 1842, the defendant offered evidence tending to impeach the note, but the judge excluded it, and ruled that the defendant was concluded by the judgment against the corporation. It was for this alledged error that the supreme court granted the first new trial. (*Moss* v. *McCullough,* 5 *Hill,* 131.) As the same evidence was given on the last trial, before Mr. Justice Parker, with respect to the judgment, that was given on the trial in 1842, the learned judge should not have nonsuited the plaintiff, if the judgment against the company was even *prima facie* evidence of the defendant's liability; much less if it was conclusive upon him. Unless, therefore, we are concluded by the decision of this court, in May 1843, (5 *Hill,* 131,) a new trial should be awarded, if we hold the judgment *prima facie* evidence of debt, against a stockholder; for the same ques-

Moss *v.* McCullough.

tion arises on the present bill of exceptions that arose on the first. Had that decision of this court been acquiesced in, and followed, for a longer period—had it not been questioned and repudiated by a respectable minority of the court of errors in 1846, and had it not been in direct conflict with the well considered case of *Slee* v. *Bloom*, (20 *John.* 669,) in the court of errors, decided in November, 1822, on appeal, I should not have felt at liberty to question it, and much less to depart from it. But as this cause was decided by me on the authority of *Slee* v. *Bloom*, and as further reflection has confirmed me in the opinion that the judgment against the company is at least *prima facie* evidence of an indebtedness, against an individual stockholder, I shall avail myself of this occasion to state the reasons which have led me to that conclusion.

The 7th section of the act of 1811, relative to corporations for manufacturing purposes, (1 *R. L. of* 1813, *p.* 245, 247,) contains these words : " for all debts which shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible, to the extent of their respective shares of stock in the said company, and no further." Under this statute Chancellor Kent held, in *Slee* v. *Bloom*, (5 *John. Ch. Rep.* 366, 379,) that a corporation could not be treated as *dissolved* within the meaning of the act, until the forfeiture of its franchise was judicially ascertained and declared. On appeal to the court for the correction of errors, that court, in February, 1821, reversed the decision of the chancellor, upon that, among other points, and held that a corporation might be dissolved by the surrender of all its franchises; that such surrender is an act *in pais ;* that by suffering all its estate, real and personal, to be sold on execution, and ceasing to act, the corporation was in fact dissolved, within the meaning of the law, and the persons then composing the company became individually liable for its debts; without first having such dissolution judicially declared by any legal proceeding instituted against the company. The decree of the chancellor being thus reversed, the cause was remitted to the court of chancery, and that court directed a reference to a master *to ascertain*

Moss *v.* McCullough.

*and report the amount due to the complainant, a creditor of the Dutchess Cotton Manufactory, from the said company,* and in order to ascertain such amount, it was ordered that the pleadings and proofs be given in evidence, and *such further competent proof as either party might think proper to furnish,* &c. The master made a special report, stating, among other things, that the complainant produced before him the exemplification of a judgment in his favor against the company, and claimed that the same was evidence of his debt against the defendants. And the defendants, on their part, claimed that the liquidation of the account of the complainant against the company, and the giving the judgment therefor, were not conclusive upon them as individuals, but that they were at liberty to contest and falsify the same. The master decided that the judgment was not conclusive upon the defendants, but *prima facie* evidence, only, of the indebtedness, and he allowed the account to be opened and impeached. Both parties excepted to the report, and Chancellor Kent decided, on this branch of the subject, *that the judgment against the company, in its corporate character, was not binding and conclusive upon the defendants, when charged in their private and individual character.* And he also allowed the accounts between the complainant and the company to be opened, notwithstanding the judgment. From this decision an appeal was taken to the court for the correction of errors, and in November, 1822, the decree of the chancellor was reversed. Ch. J. Spencer, who gave the only opinion of the court, says—"I perceive no escape from the conclusion, that the respondents [the individual stockholders] are individually liable, to the same extent that the company was liable. Whatever was a debt against the company is now, by force of the statute, a debt against them; and if the company itself was concluded, the respondents are equally concluded." And elsewhere he observes, "that the respondents are chargeable with the appellant's debt, on the principle that the trustees, as their agents, have contracted the debt, and because the statute fixes their liability. The respondents can not, therefore, impeach the consideration of the debt, in any other

manner, nor on any other ground than any principal can be allowed to impeach a debt contracted by his legally authorized agent." And he proceeds to say that we must regard the judgment *as a solemn* admission merely on the part of the company, of indebtedness; for it is not of itself, as *res judicata*, binding on the stockholders, if it was procured by fraud, or is founded in error.

The legislature, in 1825, in the sixth section of the act to prevent fraudulent bankruptcies by incorporated companies, &c. (*Laws of* 1825, *p.* 448,) in effect adopted the views of Ch. J. Spencer, that a corporation may be *dissolved* by an act in *pais,* and they so qualify it, that there must be a neglect to pay its debts, or a suspension of its ordinary business for one year, to work this consequence; and this provision was re-enacted by the revised statutes, title 4, chapter 18, of part 1. (1 *R. S.* 603, § 4.) The decision of the court of errors in *Slee* v. *Bloom* was doubtless well known to the legislature, when the act to incorporate the Rossie Lead Mining Company was passed. (*Laws of* 1837, *p.* 441.) The 9th section of that act does not differ essentially from the similar provision in the act of 1811, relative to corporations for manufacturing purposes. While the latter fixes the liability of the stockholders individually, at the *dissolution* of the company, the former charges it upon those who are stockholders when the *debt or demand is contracted* by the corporation or their agents. The general manufacturing act did not require a judgment first to be recovered against the company, before the individual members should be charged. This is superadded by the 10th section of the act to incorporate the Rossie Lead Mining Company. And the creditor is moreover required to cause an execution to be issued thereon; and his right to sue the individual stockholders is suspended until such execution is returned unsatisfied.

There is nothing, however, in the act which lessens the effect of a judgment against the company, upon the rights of the individual stockholders. If the legislature had intended to repudiate, or to modify, or qualify the decision of the court of errors in *Slee* v. *Bloom,* with respect to the obligatory force of the judg-

Moss *v.* McCullough.

ment, it is presumed that they would have used language to in-
dicate that intent. They were not unmindful of that decision;
for the 8th section expressly adopts, amongst other things, the
part of the revised statutes before cited, relative to the acts
which shall be deemed a dissolution of the corporation. The
act under consideration is only a part of a great system, com-
menced at an early day, and intended to secure the credit, &c.
of corporations, by superadding the responsibility of the individ-
ual members to that of the corporation. A judicial construction
of the section under review, by the highest court of the state,
after an elaborate argument by eminent counsel, acquiesced in
for near a quarter of a century, should not have been disregard-
ed by this court, without the strongest reasons. It is to be pre-
sumed that the legislature, in granting the charter to the Rossie
Lead Mining Company, intended to adopt the construction
which the highest court in the state had thus given to the gen-
eral law, with respect to which that charter was *in pari mate-
ria*. Had they intended to repudiate that construction, they
would have adopted terms which would have left their mean-
ing free from uncertainty or doubt. (*See* 1 *Kent's Com.* 463,
*et seq. as to the rules for construing statutes.*)

Were the question an open one, the rule adopted in *Slee* v.
*Bloom* is to be preferred for its convenience and simplicity, and
as the most conformable to legal analogies. The officers of an
incorporated company are, to a certain extent, the servants of
the individual corporators. They owe their election and are
amenable to the latter. The ideal person, the corporation, acts
through these officers. It can make no contract except by their
agency, directly or indirectly exerted. It is true these officers
are not the servants of the individual stockholders in matters
not connected with the legitimate affairs of the company. But
it is insisted, that when the company moves within the sphere
which it was designed to occupy, the acts of its officers not only
bind the company, but the individual members. It is more just
that the latter should suffer by the acts of the officers, than an
innocent stranger who has parted with his property in a confi-
ding reliance on their good faith and responsibility. The stat-

Moss v. McCullough.

ute fixes the liability upon the stockholders personally for the debts and demands contracted by the corporation or their authorized agent or agents. The stockholders, therefore, can not impeach the consideration of the debt, in any other manner, nor on any other ground, than any principal can be allowed to impeach a debt contracted by his legally authorized agent. He may show collusion between the creditor and the officers of the company, or mistake in liquidating the amount of the indebtedness. But with the exception of fraud or mistake, the judgment against the company, or a liquidation of a debt by the officers of the company, is as obligatory upon the individual stockholders, when they are sought to be charged, as it is upon the corporation itself. The learned judge therefore erred in granting the nonsuit.

But suppose we are wrong in this view of the subject. It will then become necessary to examine some of the other questions that were involved in the case.

It is to be regretted that it does not appear upon what ground the nonsuit was granted. When the plaintiff first rested, the motion for a nonsuit was made on the following grounds. 1st. That the plaintiff had not proved any organization, or acceptance of the charter of the Rossie Lead Mining Company. 2d. That he had not proved any authority to give the note. 3d. That he had not proved any consideration for the note. 4th. That he had not shown that the note was given in the ordinary transaction of the business of the company. 5th. That no special authority had been shown to the president and secretary to give the note, nor had it been ratified by any legal act, subsequently ; nor was it shown to have been given for a debt contracted in the ordinary course of the business of the company. 6th. That the defendant is a guarantor for the debts of the company, and the president or other officers had no right to give a note on time. In this stage of the cause the learned judge denied the motion ; after which both parties went into evidence, in the course of which it was shown that the note was given on the purchase of the smelting works of Moss and Knapp. And it was conceded, that in the book of minutes of the company,

there was no resolution of the directors authorizing the purchase, and the giving of the said note. On the close of the proofs the motion for a nonsuit was renewed on the grounds before stated, and also, 7th. That there was no entry of a resolution on the books of the company authorizing the purchase of the smelting works and the giving of the note. The counsel for the plaintiff insisted, 1. That the officers of the company had authority to make the purchase and to give the note in question, and that the company had ratified and adopted their act; 2. That the consideration was entirely lawful, and such as bound the company, and the defendant as one of its stockholders; 3. That it was, at all events, a question to be submitted to the jury, under proper instructions, whether the said note was properly executed by the officers, and whether the property for which it was given was such as was appropriate for the legitimate business of the company; 4. That the evidence showed that the note was valid against the company, and that the individual stockholders could not impeach it, except by showing fraud or imposition in obtaining it, or that it was founded in error. The judge ordered the plaintiff to be nonsuited, to which he excepted.

The first objection, that no organization of the company was shown, has not been urged. It is founded upon an erroneous assumption of facts, and is without foundation. That a corporation may give a promissory note, is too plain for argument. (*Moss* v. *Oakley,* 2 *Hill,* 265.) This power in the abstract, has not been questioned by any member of the court of errors. The note imports a consideration, and it is for the defendant to impeach it. The whole of the defendant's objections finally resolve themselves into this : whether the officers of the company were authorized to make the purchase of the smelting works of Moss & Knapp, for which the note in question was given. If they were so authorized, or if the company subsequently ratified the purchase, it is difficult to perceive how the company, or the defendant, can elude the payment of the note in question.

The business of the company, according to the charter, was "the raising and smelting lead ore or galena at Rossie, in St. Lawrence county." The testimony in the cause shows that "the

Moss *v.* McCullough.

raising of lead ore" is one branch of business, and the "smelting" it another. From the granting of the charter to the giving of this note, the company confined themselves to the former branch of business, and the "smelting" was performed for them by Moss & Knapp, under contract. It has not been doubted, that thus far the transactions of the company were legal. Nor has it been questioned that the company might originally have commenced and carried on both branches of the business. In October, 1839, the directors deemed it for the interest of the company to carry on both branches of the business within themselves; and for that purpose they purchased of Moss & Knapp the whole of their smelting works, for the sum of fifteen thousand dollars, for the payment of which at a future day, the company gave certain promissory notes signed by their president and secretary, of which the note in question is one. It is the validity of this purchase which is questioned by the defendant.

*Moss* v. *The Rossie Lead Mining Company,* (5 *Hill,* 137,) was an action brought against the company upon one of their notes, given on the said purchase. The action was defended by the company upon the same grounds which have been taken by the defendant here. It was tried at the Oneida circuit in 1842, before Gridley, circuit judge, who overruled the defence, and directed a verdict for the plaintiff. The cause came before this court on bill of exceptions, to the ruling of the circuit judge, and the motion for a new trial was denied. The opinion of the court, delivered by Judge Cowen, covers the whole ground of the defendant's objections to a recovery in this cause, so far as relates to the authority of the directors to make the purchase, and give the note in question. Ch. J. Nelson concurred in that opinion, and Bronson, J. dissented. That judgment has not been reversed by the court of errors, and still remains in force. As an authority, it is directly in point, and is utterly fatal to the whole defence. I coincide fully with Judge Cowen, in all his reasoning on the subject, and do not therefore deem it necessary to go over the whole again in detail. Every question then discussed has arisen before me, at the circuit, in various other causes, and been invariably decided in the same way.

Moss *v.* McCullough.

Had the business contemplated by the charter equalled, in its profits, the expectations of the enterprising gentlemen who first embarked in it, there is no question that the defendant would have been entitled to his proportionate share of the gains. The company could not have withheld from him his dividend, on the ground that a threshing machine had been purchased among the implements for smelting lead, and that one of their tenements had been used as a school house, for the children of their hands.  Nor could they have withheld it, because no resolution appeared in their book of minutes, directing the purchase, and appointing the president and secretary to execute notes for the purchase money.  It would be enough that the property came to their use, and that profits had thereby accrued, to entitle the defendant to his share.  Does not the principle of reciprocity require, that since, from various causes without the fault of the parties, the speculation has proved disastrous, the loss should be borne by the same parties who would have shared the gains had the result been as auspicious as their desires?

I think the learned judge erred also in excluding evidence of the recovery of judgments against the company, on notes given by the president.  Such judgments afforded persuasive evidence that the company acquiesced in the acts of their officers in giving notes.  It matters not that the defendant had then ceased to be a stockholder.  Unless it was shown that these judgments were collusively obtained, they afforded competent evidence of the usage of the company with respect to the authority conferred on their officers.  It was proper evidence, in connection with other facts, for the consideration of the jury.  This evidence was held admissible in *Moss* v. *The Rossie Lead Mining Co.* (5 *Hill*, 337.)

The foregoing observations dispose of this case, and show that it should, at least, have been submitted to the jury on the question of authority to make the purchase and give the note.  In my judgment the judge should have instructed the jury to find a verdict for the plaintiff.

I may be deemed wanting in respect to the learned members of the court of errors if I should fail to notice the other objec-

Moss *v.* McCullough.

tions to the plaintiff's recovery. And 1st. It is said that the plaintiff was a guarantor of the debts of the company. This suggestion is made, I believe, for the first time by Judge Cowen, in *Moss* v. *McCullough,* (*supra.*) Indeed, the learned judge in the same opinion treats the stockholder as a surety for the corporation. A part of the reasoning of Lt. Gov. Gardiner is based upon the hypothesis that the stockholder is a guarantor for the company. On that theory he looks behind the note, into its consideration, and finding that a part of it was composed of damages for a breach of contract, which accrued before the defendant became a stockholder, he holds that the corporation could not increase the responsibility of the guarantor ; that the guarantor is only liable for contracts subsequent to the guaranty ; and he infers, therefore, that for this reason the note was void as against the defendant. A leading portion of the argument of Senator Putnam is founded on the assumption that the stockholder is the *surety* of the company : and he therefore extends towards him all the indulgent constructions which the law favors with respect to a party bearing that relation. He repudiates the notion of a guaranty as being inapplicable to the case.

Mr. Lott, on the contrary, in his learned opinion, very correctly admits, that the case of the stockholder is not strictly a case of guaranty or suretiship, where laches or indulgence to the creditor would operate as a discharge.

If we look to the statute itself for the evidence of the defendant's liability, rather than to any theoretical reasoning on the subject, we shall find that it does not rest on the principle of guaranty or suretiship. A guaranty, in its enlarged sense, is a promise to answer for the payment of some debt, or the performance of some duty, in the case of the failure of another person, who in the first instance is liable. (2 *Kent's Com.* 121.) It must be upon a sufficient consideration, moving between the parties, or it will be void by the statute of frauds. It is not negotiable, and is available only in the hands of the party to whom it was given. (*Watson* v. *McLaren,* 19 *Wend.* 557. *Miller* v. *Gaston,* 2 *Hill,* 188, 192 *per Bronson, J.*) If the liability of the defendant rests upon the doctrine of commercial

Moss *v.* McCullough.

guaranty, clearly the lieutenant governor was right in the conclusion which he deduced from it. But this is not a guaranty, but a liability created by statute. It attaches the moment the debt is contracted, and continues until it is paid. It follows the debt into whose hand soever it goes, like the liability of the corporation itself. If the one is negotiable, the other is negotiable also. It has nothing in common with a guaranty, except that a payment of the debt by the corporation discharges the liability. If the stockholder pays the debt he has no remedy over, against the other members of the corporation, for reimbursement. (*Bailey* v. *Bancker*, 3 *Hill*, 188.) He may, perhaps, in equity, be entitled to contribution, but the remedy is expensive and embarrassed with complicated difficulties. (*See Judson et al.* v. *The Rossie Galena Co.* 9 *Paige*, 198.) This remedy, if one exists, against the corporation, would be fruitless, because the latter must be shown to have been insolvent, before the remedy of the creditor could be enforced against him.

The condition of a surety differs, in some respects, from that of a guarantor. The claim against him is *strictissimi juris.* He may be discharged even by delay in prosecuting the principal after a request to that effect by the creditor, if the principal thereafter becomes insolvent. (*King* v. *Baldwin*, 17 *John.* 384.)

But the notion that a stockholder can be deemed either a guarantor or a surety of the company has been expressly disclaimed by this court. (*Harger* v. *McCullough*, 2 *Denio*, 119.) Both the individual stockholders who were such when the debt was contracted, and the corporation, are principal debtors. And but for the 10th section the creditor might sue either, at his election. The requirement that he shall first proceed against the corporation, is no more than applying an equitable principle, which requires that the debts should be paid from the joint funds of the associates, rather than from the separate property of any one of them. With regard to the debts of the company, the individual stockholders stand upon the same footing as though they were an unincorporated association or partnership. This is the view which was taken of the question under a charter of

Moss v. McCullough.

the same nature, in *Allen* v. *Sewall*, (2 *Wend.* 327 ;) and although that judgment was reversed, (6 *Id.* 335,) yet upon this point the members of the court of errors who delivered opinions agreed substantially in the doctrine which had been laid down by this court. This was emphatically so with respect to the chancellor and Senator Tallmadge, who, though they differed on the question of reversal, agreed with the supreme court on the construction of the statute, as to the individual liability of the members. (6 *Wend.* 347, 348, 363.)

Again ; it is said that a part of the consideration arose for damages which had accrued before the defendant became a stockholder, and that as the declaration contains only a count upon the note, the plaintiff can not fall back on the residue of the consideration of it, and should for that reason have been nonsuited.

In answer to this, it may be remarked, that it is in the first place by no means certain that any portion of the consideration of the note accrued before the defendant became a member of the corporation. If the cause must turn upon that point, the question of fact should have been submitted to the jury. Secondly. *Prima facie*, the debt was contracted when the note was given. The purchase of the smelting works of Moss & Knapp was the consideration for the note. The defendant was then a stockholder, and the directors in a certain sense his agents. The latter purchased nothing which had not been used in connection with the business of smelting lead. If damages were included in the note, for a breach of contract occurring before the defendant became a stockholder, the defendant was still liable, because the giving of the note was contracting a debt, within the meaning of the charter. Even on the plaintiff's hypothesis, that for those damages he was not liable, he was merely entitled to deduct that amount from the note.

On the whole, I think the nonsuit should be set aside, and a new trial ordered, on the following grounds. 1st. The judgment against the company was *prima facie* evidence of a debt against the defendant, open to be impeached for collusion or mistake. 2d. There was evidence, sufficient to be submitted to the jury,

as to the authority of the directors to make the purchase, and to give the note. 3d. The evidence offered, of other judgments against the company, on notes given by the officers, was admissible as persuasive evidence that the officers had authority to give the notes. 4th. If a portion of the consideration of the note and judgment accrued before the defendant was a stockholder, that portion alone should be deducted from the note, and the plaintiff was entitled to a judgment for the balance. 5th. A stockholder does not stand in the light of a guarantor or surety, but is a principal debtor.

New trial granted; costs to abide the event.