288

| Plymouth Cordage Company vs. William M. Chapin | Jury Trial Waived No. 42333 |

DECISION

February 20, 1919

BARROWS, J. Walter Coleman & Sons was a Rhode Island corporation chartered March 4th and organized March 30th, 1911. On February 26, 1914, it made an assignment for the benefit of its creditors to Walter U. Eddy, who has practically closed his administration. His final account as assignee is pending in the Superior Court.

286, 287. 288

This is a suit to enforce defendant's statutory liability as a director of the company under Chap. 214, Sec. 12, General Laws of 1909. Defendant since the date of organization has continuously been a director.

The first question argued by defendant was whether plaintiff had satisfactorily proved that the debts of the corporation were in excess of the capital stock actually paid in. We are aware of the strictness of proof required.

Mott vs. Arnold, 35 R. I. 462.

Substantially the only cash paid in for capital stock was $5500 for preferred stock. The capital common stock of 1000 shares, except for 8 shares purports to have been paid in in the form of a sale of merchandise by E. J. F. Coleman to the company. This merchandise was not inventoried. Its value was estimated by Coleman from an inventory taken July 1, 1910. No appraisal, as provided in Chap. 214, Sec. 8, was attempted. It is, therefore, impossible for anyone to actually prove the value of this merchandise. As far as plaintiff is concerned it must be incapable of any proof. Such facts as could be proved were within the knowledge of the directors and available in defence if facts constituting a defence existed.

Smith & Thayer vs. Arnold, 37 R. I. 512.

The testimony of E. J. F. Coleman, also a director from the outset, is that a fair valuation of this property turned

289

over for the capital stock was $85,000 "if you include the good-will." The manner and tone of witness as he answered counsel's question on this matter showed how dubious he considered this item of good-will. It is noteworthy that no valuation was ever placed upon the good-will in any statement of Coleman's or the company's financial condition. Taking a statement of the company on April 1, 1911, two days after the organization, it shows assests of $50,004.07. From this it is apparent that the good-will must have been carried as worth

288, 289

about $35,000.

Taking Coleman's figures, we are asked to find that with property worth $85,000, less $45,667.25 liabilities outstanding at the time of incorporation, the capital stock paid in by Coleman was approximately $40,000, which with defendant's $5500 credit of capital stock actually paid in exceeded the debts, which as filed with the assignee amounted to $44,738.86. Even assuming that Coleman's property could be turned in for capital stock and be considered as capital stock actually paid in, which we seriously question, the unreasonableness of Coleman's estimate is apparent from an examination of the various financial statements in evidence. (Exhibit D) They are dated April 1, 1911, December 31, 1911, December 31, 1912; the former showing a net worth of $4336.82, which it must be remembered is based upon a guess, and the latter shows a net worth of $21,806.55. The inventory (again guessed at) when the assignment was made February 26, 1914, shows a net worth of $11,032.20. With such evidence it is idle to assert that the capital stock actually paid in was in excess of the debts. The inflated value attached to good-will cannot be made to take the place of a real capital stock created for the benefit of the creditors of a corporation.

On the evidence we find that the capital stock actually paid in was less than the indebtedness at the time of the assignment by an amount considerably in excess of the present plaintiff's claim.

Plaintiff's debt accured between September 2nd and December 8th, 1913, and amounted to $10,155.95, after crediting payment of 15% made on the same by the assignee.

A further recital of facts is necessary before the other ground upon which defendant contests liability can be discussed.

Plaintiff objected to the introduction in evidence of facts occurring after the assignment, so far as they related to

289

doings of the assignee after conference with the creditors in attempting to settle the affairs of the corporation. The Court

290

evidence offered by the defendant with the understanding that it might be disregarded if improperly in. We will treat it hereafter as if the entire testimony was properly in evidence.

The corporation made an assignment to Walter U. Eddy on February 26, 1914. On March 18, 1914, the Superior Court made an order authorizing Eddy to continue the business for six months. He employed E. J. F. Coleman and Walter R. Coleman as selling agents. This action of the assignee was taken with the approval of the plaintiff. Walter R. Coleman at this time was known by the plaintiff and others to be capable but unreliable. Business was conducted at a slight profit until October 7, 1914. At that time, plaintiff again consenting and approving, the Court decreed a sale of the assets in the hands of the assignee to Walter R. Coleman on credit and terms which called for very little cash. (Exhibit 2) All assets were turned over to Walter R. Coleman and while in possession under such agreement, he converted to his own uses all the assets of the concern except sufficient to pay creditors 15%. Thereafter the assignee took back such property as remained, converted it into cash and now has on hand a few odds and ends of an appraised value of $21.37 and a patent. Both of these items he testifies are worthless. He has paid 15% to creditors. The facts show that plaintiff not only consented to but advised the procedure above outlined. Defendant neither consented to nor was consulted about the procedure of the assignee above described. Defendant had received on the day prior to the assignment a promissory note of the corporation for $2996.45 secured by the assignment of book accounts, a preference which has never been attacked, and which note has been fully paid.

289, 290

Defendant admits that mismanagement of the assignee personally would not constitute any defence in this suit.

Hargrave vs. Chambers, 30 Ga. 580.

Stewart vs. Lay, 45 Ia. 604.

He urges, however, that in this instance the mismanagement by the assignee and his consequent loss of assets was at the request and under the direction of the plaintiff and other creditors, and he then argues that the asignee ceased to act as assignee because he acted beyond any authority given to him by the deed of trust; that he thereafter became merely an agent of the plaintiff and other creditors; that the liability of a director is that of a surety for the debts of the corporation; that the principal debtor being given time by the act of the assignee as agent for the plaintiff and the obligation of the principal debtor being altered without the consent of the surety discharged the latter's obligation.

**291**

He urges in this connection that the statutory liability of the director is a tort based upon negligence. (Moies vs. Sprague, 9 R. I. 541); that when plaintiff with full knowledge of the unreliability of Leonard R. Coleman permitted the latter to take over all the assigned property, it was guilty of contributory being without a jury admitted all such negligence which barred its recovery.

The suggestion of contributory negligence as a defence is novel but we shall not consider it from a legal standpoint, because the facts do not warrant us in finding that plaintiff was guilty of such negligence. The method adopted to escape from a bad business situation was the not uncommon one of leaving the former proprietor in charge under the general direction of the assignee. For six months this plan proved profitable and the subsequent decree of sale to Leonard R. Coeman with defendant's safeguard for the return of the assigned stock in the event of non-compliance by the purchaser with the terms of sale was a reasonable effort to collect a fair

percentage of the creditor's past claims. It involved also the opportunity of creditors to profit by the sale of new goods to a going concern. Even, therefore, if plaintiff can be held to have directed the assignee to adopt the course which was followed, we are unwilling to say that plaintiff was guilty of contributory negligence.

The question of suretyship is important and likewise novel. Plaintiff has urged that it is not fairly raised because all acts of the assignee were under orders of the Court and cannot be held to be the acts of the creditor. There is technical force in this position. We propose, however, to accept defendant's construction of the procedure.

In view of the recital in the decree that 75% of the creditors approved the course of the assignee, and in view of the testimony that plaintiff was one of the two main creditors who desired the action of October 7th, we will consider whether the giving of time to the corporation through the assignee eliminates the obligation of the director.

Defendant's contention is based upon certain language contained in Mott Iron Works vs. Arnold, 35 R. I. 356, and approved in Baker vs. Smith, 41 R. I. 17. This language defendant contends makes a director a surety for the corporate debts. In Mott Iron Works vs. Arnold, supra, which was a claim based both upon liability as a stockholder and as a director, the Court said, page 465: "The capital stock paid in is a fund for the payment of creditors." And further, page 465, "This liability of directors (for excess of debts above paid in

**292**

capital stock) is in the nature of the liability of sureties." Further, at page 469: "Their liability (directors' liability for excess) is in the nature of a surety fund for the protection of creditors in the event of such excess."

In our opinion the Supreme Court did not intend to go further than to suggest analogy. It did not say that the director was a surety and as such

entitled to exoneration if creditors of the corporation give time to the corporation. Nor do we believe that a director is a surety within our statute.

General Laws of 1909, Chap. 214, Sec. 12, makes directors jointly and severally liable in an action of case for excess of debts over capital stock paid in. Section 18 allows the creditor to bring simultaneous suits for his debt against the corporation and the directors. Sec. 21 gives the director paying such debt an action over against the corporate property. These rights as relating to directors are new and hence the remedy is exclusive.

Legg vs. Dewing, 25 R. I. 568.

The latter case clearly enunciates the distinction between the creditor's rights against a stockholder and his rights against a director.

By Sec. 19 the statutory liability of stockholders is clearly made a secondary one.

Elsbree vs. Burt, 24 R. I. 322.

Procurement of a judgment against the corporation is an essential condition precedent. Whatever, therefore, may be the warrant for the claim that the stockholder is a surety and entitled to rights as such, the same claim cannot be made under the above statute for a director. The latter's liability is primary.

Douglas, J. in Kilton vs. Prov. Tool Co., 22 R. I. 605, at 611 says: "When a remedy is direct and immediate, the obligation is properly called primary."

See to same effect, Durfee, J., in Moies vs. Sprague, 9 R. I. 541.

We do not concede that Sec. 21, supra, makes the obligation of a director that of a surety in the strict sense of that term. It merely gives a director reimbursement if there are corporate assests available. A surety is a person responsible for the debt, default or miscarriage of another.

293

Brant on Suretyship, 3rd ed. Sec. 1.

Cooley, J., in Smith vs. Sheldon, 35 Mich, 42, at 47, defines a surety as "a person who, being liable to pay a debt or perform an obligation, is entitled if it is enforced against him to be indemnified by some other person who ought himself to have made payment or performed before the surety was compelled to do so."

Such may be the position of a stockholder under our statute. It does not seem to us to be the position of a director. Even, however, as regards stockholders there has been much reluctance to carry the laws of suretyship to their logical conclusion when an extension of time has been given the corporation by the creditors.

Brandt on Suretyship, 3rd ed. Sec. 49, p. 118.

In Hargin vs. McCullough, 2 Denio 119, at 123, the Court refused to do so on the ground that the liability was joint and several and hence made the stockholder a principal debtor.

See also note in 3 American State Reports, 848.

Compare Majority opinion contra, Hanson vs. Donkeraley, 37 Mich. 184.

The latter case was one where the stockholders' liability did not accure until after decision had been rendered against the corporation.

Under our statute the liability of a director for excess of debts over capital stock paid in is an original and primary liabilty. It arises from the director's wrongful act or acquiescence. It is a personal obligation that the director assumes regardless of the creditors' action against the corporation. If the capital stock paid in may be said to be a fund for the payment of creditors up to its full amount, so the liability of the director is a source to which subsequent creditors can look for their payment. It is a new source. By incorporation the directors have escaped certain personal liabilities. For violation of their duty relative to the excess of debts over capital stock a new obligation is, however, laid upon them and not primarily upon the corporation. The directors are jointly and severally

liable regardless of the liability of the corporation. It is true that the corporation may be liable for debt by reason of the receipt of a quid pro quo, but the directors are responsible for their own acts in violating the statutory requirements.

This director's liability is not penal. Mott Iron Works vs. Arnold, supra.

It is a protection given to the creditors by reason of the director's corporate mismanagement. This liability, therefore, is not for the debt, default or mismanagement of another but for the default of the directors themselves. The liability may in respect to recovery over, under Sec. 21, be somewhat like that of a surety. But nothing in the statute makes the director a surety, and a consideration of the spirit of the chapter and its reason for imposing liability seems to us to show that the relation of principal and surety in its ordinary connotation is not involved.

We therefore fail to find that extension of time by plaintiff operated to discharge defendant from his liabilty as a director.

We give decision for plaintiff for $10,155.95.

The goods were sold on 60 days' credit. The plaintiff's claim, therefore, became payable at the expiration of this period. Interest at 6% therefore, should be added to the above amount from February 8, 1914, amounting for 5 years to $3,040.80. The total amuont, therefore, for which decision is given for plaintiff is $13,202.75.

For plaintiff: Murdock & Tillinghast.

For defendant: Huddy, Emerson & Moulton.